**GOLDMAN–MORGEN, INC., Plaintiff,**

v.

**DAN BRECHNER & CO., INC., Defendant.**

**No. 72 Civil 17.**

United States District Court, S. D. New York.

March 30, 1976.

Ostrolenk, Faber, Gerb & Soffen, New York City, for plaintiff; Robert C. Faber, New York City, of counsel.

Amster & Rothstein, New York City, for defendant; Jesse Rothstein, New York City, of counsel.

## OPINION, FINDINGS OF FACT

### and

## CONCLUSIONS OF LAW.

LEVET, District Judge.

Plaintiff, Goldman-Morgen, Inc. (hereinafter "Goldman"), complains of defendant, Dan Brechner Co., Inc. (hereinafter "Brechner") in substance as follows: That on or about July 21, 1964 plaintiff was duly issued a Certificate of Registration, Class G, Registration No. Gp 43212, covering a work of art and in particular a coin bank, Plaintiff's Exhibit 3, and that defendant has copied said bank and sold said copies in infringement of plaintiff's copyright.

Defendant Brechner, on the other hand, contends that plaintiff does not have a copyright on its commercially sold item, Plaintiff's Exhibit 3. Defendant further contends that plaintiff's copyright is invalid for failure to comply with the statutory requirements.

At a hearing for a preliminary injunction before Judge MacMahon of this Court on Jan. 25, 1972, a consent order for a preliminary injunction was entered into between the attorneys for the parties.

The issues in this case are whether plaintiff's copyright is valid and, if so, whether defendant infringed upon plaintiff's copyright.

After hearing the evidence presented by the parties, examining the exhibits, the pleadings, the briefs and the Proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. This action arises under the United States Copyright Law, Title 17 U.S.C. (1947) as amended and Title 28 U.S.C. § 1338.

2. Plaintiff and defendant are corporations, incorporated under the laws of the State of New York, and both are engaged in the business of importing

and distributing novelties and giftware. [Tr. 9–10, 143–144].[1]

3. Goldman & Morgen, the plaintiff, was established in 1962 and Leo Goldman has been the president since its founding. [Tr. 8–9].

4. Leo Goldman devised a novelty item in the form of a child's bank with four comic faces, each face depicting a different mood. [Pl. Ex. 3,[2] Tr. 11, 14, 107, 110].

5. In the fall of 1963, Leo Goldman traveled to Japan [Tr. 11–12] and met there with Maruyoshi Seitosho, a designer, mold maker and manufacturer [Tr. 15–16].

6. Leo Goldman prepared rough sketches of his proposed bank [Tr. 10]. While Mr. Goldman observed, an artist for Maruyoshi Seitosho made sketches of the proposed bank [Tr. 15, 109] using Mr. Goldman's rough sketches and ideas. From the sketches, a clay model of the bank was made [Tr. 15]. Leo Goldman reviewed the clay model of the bank and suggested some changes [Tr. 16]. Following this, a papier mache sample was prepared [Tr. 16–17]. Mr. Goldman reviewed and approved the sample [Tr. 18], which was designated the "Moody Mary Bank." Thereafter, a production mold was made and production of these banks commenced. [Tr. 18.]

7. I find that Leo Goldman, in his capacity as president of the plaintiff corporation, commissioned the design and manufacture of the Moody Mary bank and participated in its design.

8. The Moody Mary bank has an exit hole in its base, which is sealed either by a glued-on felt pad or by a rubber plug. [Tr. 24, 25, Pl. Ex. 2, Pl. Ex. 3].

9. All copies of the Moody Mary bank that were sold in the U.S.A. by plaintiff carried the copyright notice "© Lego." [Tr. 20, 29–30].

10. When a felt pad was used as a plug, the copyright notice was stamped in ink on the pad [Tr. 20, 21, Pl. Ex. 3]. When a rubber plug was used, the copyright notice was stamped in ink on the base of the bank adjacent to the plug [Tr. 25–26, Pl. Ex. 2].

11. I find that the copyright notice "© Lego" was properly and permanently affixed to all copies of plaintiff's Moody Mary bank.

12. Copies of the Moody Mary bank were exported from Japan to plaintiff in the United States [Tr. 19].

13. Plaintiff first published the Moody Mary bank, with the aforesaid copyright notice, on October 25, 1961 [Tr. 31, Pl. Ex. 1].

14. On July 21, 1964, plaintiff obtained from the Copyright Office a Certificate of Copyright Registration for the Moody Mary bank, Class G, Registration No. Gp 43212 [Pl. Exs. 1 & 2].

15. Plaintiff sold the Moody Mary bank during the period 1963 through 1973 [Tr. 32–33].

16. In 1971 defendant introduced its item no. 98/109 [Pl. Ex. 9] for sale into the United States. It is a novelty bank with four comic faces, each face depicting a different mood. Defendant's bank is the subject of this infringement action. [Defendant's Answers to Plaintiff's Interrogatories Nos. 6, 7 and 9].

17. Defendant did not itself design its accused item no. 98/109, but instead purchased item no. 98/109 off the shelf of a supplier in Japan toward the end of 1970 [Tr. 145, Defendant's Answer to Plaintiff's Interrogatory No. 13].

18. Both plaintiff's Moody Mary bank [Pl. Ex. 3] and defendant's item no. 98/109 [Pl. Ex. 9] are novelty coin banks. They depict a comic girl with four faces, under a tuft of yellow hair. There are captions under each face, and these captions are identical on each bank. In both banks, the money is inserted into a slot just under the hair, on the face captioned "I am happy today." This face and the three others are identical in design and coloring. The two banks are also identical in size. There is an incon-

1. References preceded by "Tr." are to the stenographic transcript of the trial.

2. "Pl. Ex." and "Def. Ex." refer to plaintiff's and defendant's exhibits, respectively, received in evidence at the trial.

sequential difference of shading on the buttons and collars of the figures. I therefore find that the two banks are identical in every respect.

19. The manufacture of both plaintiff's and defendant's banks occurred in the same geographical area, namely Japan [Tr. 33–34, 85–86, Defendant's Answer to Plaintiff's Interrogatory No. 11e]. Over the ten-year life of its Moody Mary bank plaintiff used a number of manufacturers [Tr. 85–86]. Plaintiff's manufacturers in Japan often subcontracted out parts of the job to other manufacturers [Tr. 131–132].

20. I find that because plaintiff's copyrighted item was manufactured by a number of Japanese contractors and subcontractors over a ten-year period beginning in 1963, and because defendant purchased its accused item in Japan in 1971, together with the fact that defendant's accused item is virtually identical in all respects with plaintiff's item, that defendant had access to plaintiff's copyrighted item and that the accused item imported and sold by defendant is a copy of plaintiff's copyrighted item.

21. Plaintiff has proved by a fair preponderance of the credible evidence that defendant's item no. 98/109 [Pl. Ex. 9] is a copy of plaintiff's copyrighted item.

22. Defendant's total sales of its item no. 98/109 are stipulated as $3,151.25 [Tr. 5, Defendant's Answer to Plaintiff's Interrogatory No. 9].

23. Plaintiff incurred attorney's fees throughout the prosecution of this action.

24. Plaintiff's counsel sought to terminate this action on several occasions by seeking payment in settlement of plaintiff's claim. Shortly after the entry of the preliminary injunction, plaintiff offered to take $700 in settlement of the claim, which offer was refused by defendant. [Tr. 221–222.] According to defendant, the amount then offered by plaintiff was $4500. [Tr. 162.] At a pretrial conference during the winter of 1972–1973, plaintiff again offered to settle this action for between one and two thousand dollars [Tr. 168], which offer was again rejected by defendant. At a pretrial conference in September 1975 before this court, defendant made a written offer of settlement of $315.13, which was orally raised on the eve of trial to $500. [Tr. 210.] At the time of trial, plaintiff made one other attempt to settle for between five and seven thousand dollars or any "reasonable offer." [Tr. 206.] This was refused by defendant, who made no further counteroffer. [Tr. 219.]

I find that defendant's refusal at all times during the pendency of this action to make any reasonable offer of settlement or to accept a reasonable offer by plaintiff, constituted bad faith on the part of defendant.

25. Plaintiff is entitled to a reasonable award of attorney's fees incurred in the prosecution of this infringement action.

26. Plaintiff's attorneys have devoted 62.2 hours to the prosecution of this action. I find that the reasonable value of the services performed by them is $4500.

## DISCUSSION

The issue upon which plaintiff's infringement claim must stand or fall is that of the validity of the copyright it obtained upon its Moody Mary bank. Clearly, there may be infringement of copyrighted works of art by reproduction of the objects themselves. *Mura v. Columbia Broadcasting System, Inc.*, 245 F.Supp. 587 (S.D.N.Y.1965).

Plaintiff introduced its Certificate of Copyright Registration of the copyright relating to its bank, and under 17 U.S.C. § 209 said certificate is prima facie evidence of the facts stated therein and, absent contradictory evidence, is sufficient to establish a valid copyright. 17 U.S.C. § 209; *United Merchants and Manufacturers, Inc. v. Sarne Company*, 278 F.Supp. 162 (S.D.N.Y.1967); *Van Cleef & Arpels, Inc. v. Schechter*, 308 F.Supp. 674 (S.D.N.Y.1969); *H. M. Kolbe Co. v. Armgus Textile Company*, 184 F.Supp. 423 (S.D.N.Y.), aff'd, 279 F.2d 555 (2d Cir. 1960). Initially, therefore,

the burden is upon defendant to produce sufficient evidence to overcome the presumption of validity. *National Institute, Inc. v. Nutt*, 28 F.2d 132 (D.Conn.1928), aff'd, 31 F.2d 236 (2d Cir. 1929). It is this threshold burden that defendant has not met.

Defendant contends that the copyright notice on plaintiff's commercial item was inadequate and that copyright protection thereon does not exist. Defendant argues that the pasted-on felt label on which the copyright notice was stamped was not permanently affixed to the item as per Copyright Office requirements. Defendant further contends that the printing of the notice by means of an inked rubber stamp onto the felt produced an image which was too light to notice and, therefore, inadequate.

## I. LEGIBILITY OF NOTICE

■ Defendant points to the fact that the copyright notice on the Moody Mary specimen which plaintiff introduced at trial was indistinct and barely legible to the naked eye. Defendant's contention in this regard is untenable. It is indisputable that the copyright notice can be seen on the felt plug with the naked eye. It is sufficiently visible to place a person concerned with copyright on notice. Minimal scrutiny by such person will show that it is the copyright notice "© Lego."

The inks used for applying the copyright notices onto the felt plug and onto the base of the bank adjacent to a rubber plug were not erasable. However, through much rubbing the ink marks could be worn or rubbed away [Tr. 27]. The actual specimen bank produced in court [Pl. Ex. 3] has a felt plug with copyright notice on the plug, which, although clearly legible, is faint in color. However, it must be remembered that the manufacture of the Moody Mary banks ceased in 1973. The sample had been kept in Goldman-Morgen's stock room and had been given to Goldman-Morgen's attorney in 1973 [Tr. 22–23]. Since the beginning of this lawsuit, this particular sample had been brought to all hearings and proceedings in connection with the present action [Tr. 23] and was thus subjected to much greater rubbing, carrying, study and abuse than would be suffered by a new bank just delivered from Japan and offered for sale to the public.

■■ During such treatment, the notice became faint. However, the faintness of the copyright notice on the trial sample cannot be generalized to a faintness on *all* copies of the work. It is to be presumed, absent evidence to the contrary, that all copies are distributed in a pristine, rather than a used, abused and aged condition. A copyright notice affixed to a work must be legible to the naked eye, but need not be as prominent as is feasible. *See Ted Arnold Ltd. v. Silvercraft Co.*, 259 F.Supp. 733, 734 (S.D.N.Y.1966), where it was held that a copyright notice stamped on plaintiff's article and discernable to the unaided eye was sufficient, although some scrutiny was required to locate it and it was in small type.

## II. AFFIXATION OF NOTICE

■ This court also rejects defendant's contention that plaintiff's copyright notice is invalid because the copyright notice on its Moody Mary bank was nonpermanently affixed.

The Moody Mary bank has a money exit hole in its base. The bank was produced for Goldman-Morgen in two versions. In one version, the exit hold is sealed by a rubber plug. In this case, the copyright notice is legibly stamped in ink on the base of the bank next to the plug.[3] In the other version of the bank, the exit hole is sealed by a felt plug that is securely glued in place. In this version the copyright notice is stamped in ink onto the felt plug.

---

**3.** Defendant does not here contend the affixation of notice to the rubber plug. Its main contention is the inadequacy of the notice on the felt plug.

Defendant contends that the felt plug is the equivalent of a removable tag and that the copyright imprinted thereon is, therefore, defective.

Concededly, "[t]he law is clear that notices which appear on paper tags attached to articles do not meet the requirement of affixation in 17 U.S.C. § 10." *Gardenia Flowers, Inc. v. Joseph Markovits, Inc.*, 280 F.Supp. 776, 783 (S.D.N.Y.1968). See also *Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co.*, 144 F.Supp. 577, 582 (S.D.N.Y.1956); *Peter Pan Fabrics, Inc. v. Dixon Textile Corp.*, 188 F.Supp. 235, 237 (S.D.N.Y. 1960). Perhaps the best way to answer defendant's contention that the felt plug in question amounted to such a tag is to refer to 37 C.F.R. § 202.2(b)(9), which states that a defect in copyright notice occurs when "[a] notice is on a detachable tag and will eventually be detached and discarded when the work is put in use." Here, the felt plug was more than a mere tag attached to the bank. The felt plug was an integral part of the bank. Such a bank has as its ordinary use the containing of money until such time as the money is desired to be removed. It cannot reasonably be contended that a rubber or felt plug, which is the sole means by which money is kept inside the bank, is such an item as to constitute a "tag" to be discarded as soon as the bank is put to use, thereby rendering a copyright notice on that plug invalid. The plug is sold as part of the bank and is reasonably intended to be used as long as the bank is used to facilitate the very function of the bank, the containing of money.

Far from being easily removable, the removal of the felt plug would require that the plug be torn from the bottom of the bank. In this regard it becomes important to note that even now, years after the bank [Pl. Ex. 3] was manufactured, its felt plug is so securely attached that its removal is quite difficult. See *Royalty Designs, Inc. v. Thrifticheck Service Corp.*, 204 F.Supp. 702 (S.D.N.Y. 1962). It was held in that case that a metal disc fitted securely into a hole on the bottom of a toy bank to prevent coins from falling out was an essential part of the bank and that notice of copyright affixed on the metal disc complied with the copyright statute as to the affixing of notice. As the court noted, 204 F.Supp. at 704:

> "[the disc] cannot fall out by itself and must be pried out with a flat object when the bank is emptied. The disc is firmly attached and is an essential part of the bank, and without it the product would not serve its purpose. The banks are sold with the disc securely inserted and it is so placed as to give adequate notice to anyone seeking to copy the article of the existence of the copyright. The method of affixing the notice amply satisfies the requirements of 17 U.S.C. §§ 10 and 19."

A small printed label firmly glued to the back of plaintiff's wall placques was held an adequate affixation of copyright notice in *Coventry Ware, Inc. v. Reliance Picture Frame Co.*, 288 F.2d 193 (2d Cir. 1961), *cert. denied*, 368 U.S. 818, 82 S.Ct. 34, 7 L.Ed.2d 24 (1961). See the discussion in *Uneeda Doll Co. v. Goldfarb Novelty Co.*, 373 F.2d 851, 854 (2d Cir. 1967). Clearly, application of the copyright notice onto the felt plug in the form in which it was done by plaintiff here satisfies the requirements of 17 U.S.C. §§ 10 and 19.

## III. ACCESS AND SIMILARITY

*Inter alia*, the elements required to prove a copyright infringement include copying.

 Ordinarily, it is not possible to establish copying by direct evidence, see *Whitney v. Ross Jungnickel, Inc.*, 179 F.Supp. 751 (S.D.N.Y.1960), and in order to prove copying a plaintiff must rely on evidence of access and of substantial similarity of designs. 2 Nimmer on Copyright § 141 at 613, 614 (1975); *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970); *Blazon, Inc. v. DeLuxe Game Corp.*, 268 F.Supp. 416 (S.D.N.Y.1965).

Because plaintiff's Moody Mary bank [Pl. Ex. 3] and the defendant's accused

bank [Pl. Ex. 9] are virtually identical [Finding of Fact 18], the test of substantial similarity has been met.

■ Concerning the requirement of access, "a reasonable opportunity to view the copyrighted work is regarded as access in itself." *Universal Athletic Sales Co. v. Salkeld*, 340 F.Supp. 899, 901 (W.D.Pa.1972). For example, in *Blazon, Inc. v. DeLuxe Game Corp., supra*, access was presumed because the copyrighted item had been displayed by the copyright owner for about a year. In the present case, some seven years elapsed between the time when the manufacture of plaintiff's bank began in Japan (by three manufacturers) and the time when defendant first observed what is now its accused bank in a showroom in Japan. [Testimony of Dan Brechner, Tr. 145]. In short, in this case there were contemporaneous sales of both the plaintiff's and the defendant's banks, with the plaintiff's bank's sales long preceding the defendant's. In *Stratchborneo v. Arc Music Corp.*, 357 F.Supp. 1393, 1403 (S.D.N.Y.1973), there were wide, substantially contemporaneous sales of two different versions of the same song. Under these circumstances, the infringer was held to have had access to the copyright owner's song.

Given these opportunities for access to the plaintiff's Moody Mary bank by defendant's supplier and/or by defendant, and in light of the cited precedents, there is a sufficient inference of access to the copyrighted work by the defendant's supplier.

■ On the question of access, also, the identity between plaintiff's and defendant's works is also quite significant:

"Where, as here, the defendant has failed to show that the allegedly infringing placques were obtained from some source other than the plaintiff's placques and, where, as here, the defendant's placques clearly appear to be copies of plaintiff's placques, the inference is justified that the alleged infringer copied plaintiff's placques."

*Miller Studio Inc. v. Pacific Import Co.*, 147 USPQ 388, 390 (S.D.N.Y. 1965).

The virtual identity between plaintiff's copyrighted work and defendant's accused work is such that "such similarities are of a kind that can only be explained by copying rather than by coincidence, independent creation or prior common source." *Stratchborneo v. Arc Music Co.*, 357 F.Supp. 1393, 1403 (S.D.N.Y. 1973); *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946); *Doran v. Sunset House Distr. Corp.*, 197 F.Supp. 940 (S.D. Cal.1961), *aff'd*, 304 F.2d 251 (9th Cir. 1962). In summary, defendant's work is not only substantially similar, but virtually identical to plaintiff's copyrighted work and access has been shown, or, at least, the inference of access is overwhelming. Defendant's work is a copy of plaintiff's.

## IV. INNOCENT INFRINGEMENT

Defendant alleges that any possible infringement was innocent, in that plaintiff omitted to affix proper copyright notice on its bank. 2 *Nimmer*, § 148 at 661, states that:

"It is clear that if the defendant's innocence is due to the plaintiff's omission of copyright notice by "accident or mistake" then although such omission may not result in the forfeiture of copyright, it will prevent a recovery of damages (as distinguished from profits or injunctive relief) [citations omitted]."

■ Most courts have found that a complete absence of copyright notice on particular copies is not necessarily inconsistent with seeking to comply with the notice requirement. *Nimmer*, § 90.11; *Kramer Jewelry Creations v. Capri Jewelry Inc.*, 143 F.Supp. 120 (S.D.N.Y.1956); *Christie v. Raddock*, 169 F.Supp. 48 (S.D. N.Y.1959); *Peter Pan Fabrics, Inc. v. Acadia Co.*, 173 F.Supp. 292 (S.D.N.Y. 1959); *Gerlach-Barklow Co. v. Morris & Bendien Inc.*, 23 F.2d 159 (2d Cir. 1927). Indeed, the Copyright Law itself has a "saving provision" which excuses such

omissions of notice in certain circumstances. 17 U.S.C. § 21.

 It has been found that all copies of the Moody Mary bank that were sold in the U.S.A. by plaintiff carried a proper copyright notice [Findings of Fact 9, 11]. The fact that certain copies of the bank might have appeared in the Nagata showroom without this copyright notice can in no way be said to invalidate plaintiff's copyright in its bank.

> "If the proper statutory notice of copyright was upon each copy as it left the control and ownership of the proprietor of the copyright, he cannot be responsible for any changes which were afterwards improvidently made upon a particular copy before it came into the hands of the last purchaser." *Falk v. Gast Litho[graph]graving & Engraving Co.*, 54 F. 890, 893 (2d Cir. 1893).

As the court stated in *H. M. Kolbe v. Armgus Textile Company*, 315 F.2d 70, 74 (2d Cir. 1963):

> "Section 10 does not impose upon copyright proprietors the duty of policing the distribution of pirated works. Only goods sold 'by authority of the copyright proprietor' are required, lest the copyright owner lose the copyright protection that is his, to carry the statutory notice. Normally, of course, the copyright owner will have discharged his obligation in this respect by seeing that each copy of the protected work has the notice affixed to it at the time it leaves his control. Therefore, the fact that unmarked copies of a work have somehow come into the possession of one whom the copyright owner alleges to be an infringer will not, without more, justify the denial of an injunction to protect the copyright owner from further unauthorized distribution:

> " 'It is not enough to show that the picture was without the statutory notice when it came into the defendant's possession; *it must appear that it left the plaintiff's possession in that condi-*

*tion.' " Gerlach-Barklow Co. v. Morris & Bendien, Inc., supra*, 23 F.2d at 162. [Emphasis added].

It is precisely this burden which defendant has failed to meet. All the evidence points to the incontrovertible fact that when the banks leave the plaintiff's hands, they contain the requisite copyright notice. Plaintiff has done all that it reasonably could to comply with the statute. Plaintiff cannot be charged, as a matter of fact or law, with knowledge that the copyright notice on its bank will be removed by persons unknown to it. It must be noted in passing, that an innocent infringement, no matter how innocent, will not prevent the awarding of profits. *Strauss v. Penn Printing & Publishing Co.*, 220 F. 977 (E.D.Pa.1915). I, therefore, reject defendant's contention that an innocent infringement will prevent any recovery by plaintiff.

## V. LACK OF COPYRIGHT ON PLAINTIFF'S COMMERCIAL ITEM

 Defendant further contends that there are substantial differences between the item that plaintiff submitted to the Copyright Office and the item it sold, and, under the provisions of 17 U.S.C. § 13, "No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with." This position is untenable. Any possible differences between the copy of the item submitted to the Copyright Office and the item actually sold by plaintiff, result from the mechanical technique involved in producing the item. [See Finding of Fact 6.] These differences have no appreciable significance upon the artistic conception of the work and I find them to be inconsequential. *F. W. Woolworth Co. v. Contemporary Arts*, 193 F.2d 162 (1st Cir. 1951), *aff'd*, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952). *Cf. First American Artificial Flowers v. Joseph Markovits, Inc.*, 342 F.Supp. 178 (S.D.N.Y.1972). As *Nimmer* points out, § 92.2:

"Section 13 of the Copyright Act requires deposit in the Copyright Office of "two complete copies of the best edition thereof published. ' . . . ." The deposit requirement of the *best edition* merely requires the best published edition available. . . . Therefore, if a better edition is published after registration and deposit, such better edition need not be deposited. A copyright will adhere in and protect all further substantial copies of the work deposited even if such further copies differ in size, color and inconsequential detail from the work deposited [citations omitted]."

## VI. AUTHORSHIP

 Defendant's final contention is that plaintiff incorrectly listed itself as the author of the bank, and that plaintiff's copyright certificate is therefore invalid in that an employee or employees or Maruyoshi Seitosho was actually the author. This contention is likewise untenable. Under the "works for hire" doctrine, which is applicable whenever an employee's work is produced at the instance and expense of his employer, the employer is presumed to have the copyright in the absence of an expressed contractual reservation to the contrary. 17 U.S.C. § 26; *Nimmer*, §§ 62, 62.2, 62.3; *Brattleboro Publishing Co. v. Winmill Publishing Corp.*, 369 F.2d 565 (2d Cir. 1966); *Scherr v. Universal Match Corporation*, 417 F.2d 497 (2d Cir. 1969); *Picture Music, Inc. v. Bourne, Inc.*, 457 F.2d 1213 (2d Cir. 1972). This doctrine is applicable when the parties bear the relation of employer and independent contractor. *Ibid.* Thus, viewing Maruyoshi Seitosho as an independent contractor hired by plaintiff without any express reservation of the copyright of the Moody Mary bank, plaintiff clearly is the author of and owns the copyright in the Moody Mary bank.

## VII. ATTORNEY'S FEES

Pursuant to section 116 of the Copyright Act, full costs shall be awarded to the prevailing party, "and the court may award to the prevailing party a reasonable attorney's fee as part of the costs." Here, plaintiff is clearly the prevailing party and is entitled to costs.

Plaintiff is also entitled to an award of attorney's fees. Although the damages which plaintiff may recover by reason of defendant's infringement are necessarily small, i.e., $3,151.25, which amounts to defendant's total sales, or that sum less provable costs of production and sales by defendant, plaintiff, when faced with an infringing sale by defendant, had no choice but to obtain counsel. At the outset of this litigation, plaintiff's settlement offer of $700.00 was reasonable under the circumstances. Without passing upon the reasonableness of any subsequent offers of settlement by plaintiff, it is unquestioned that in view of the substantial effort entailed in pursuing this litigation, the plaintiff's counsel fees increased. On the day of trial, plaintiff made a final offer to accept a "reasonable" amount in settlement. Each of plaintiff's attempts to reach settlement short of trial were rejected out of hand by defendant. Aside from an offer of judgment made by defendant shortly before trial in the amount of $315.00, no attempt was made by defendant to settle this action. Defendant's offer of judgment was too small and inadequate under the circumstances.

 Defendant's refusal at all times during the pendency of this action to make any reasonable offer of settlement, or to accept a reasonable offer by plaintiff, constituted bad faith on the part of defendant, and in my discretion I award attorney's fees to plaintiff in the amount of $4,500.00.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the issues pursuant to 17 U.S.C. and Title 28 U.S.C. § 1338.

2. The introduction into evidence of plaintiff's Copyright Registration Certificate establishes its prima facie validity and the prima facie validity of the facts stated therein.

3. Defendant has failed to sustain its burden of overcoming the prima facie proof that plaintiff's copyrighted bank is original with plaintiff.

4. Defendant has failed to sustain its burden of overcoming the prima facie validity of the Copyright Registration Certificate and of the facts stated therein.

5. Plaintiff has proved by a fair preponderance of the credible evidence that it is the proprietor of a valid copyright, Gp 43212, covering the item which is designated "Moody Mary Bank."

6. The copyright notice "© Lego" was properly and permanently affixed to all copies of plaintiff's Moody Mary banks.

7. Plaintiff has proved by a fair preponderance of the credible evidence that defendant, either directly or through its supplier, had access to and copied plaintiff's copyrighted bank.

8. Both plaintiff's and defendant's banks are identical.

9. Defendant has infringed upon plaintiff's copyright.

10. Plaintiff has proved by a fair preponderance of the credible evidence that defendant refused at all times during the pendency of this action to make any reasonable offer of settlement, or to accept a reasonable offer by plaintiff, and that this constituted bad faith on the part of the defendant.

11. Plaintiff is entitled to judgment herein permanently enjoining defendant from further infringement of plaintiff's copyright, to damages and costs, and to an award for its reasonable attorney's fees in the amount of $4,500.00.

The issues of liability and attorney's fees to date having been determined by this court, the issue of damages, encompassing defendant's sales, costs and profits, and any lost sales by plaintiff, is to be submitted to a Magistrate to hear and report, as per stipulation between the attorneys for the parties to this action. Therefore, the interlocutory judgment to be entered hereon shall direct that a Magistrate hear and report on the damages attributable to defendant's infringement of plaintiff's copyright.

Settle interlocutory judgment on or before April 2, 1976 upon notice pursuant hereto.

So ordered.