**DODD, MEAD & COMPANY, INC., Plaintiff,**

v.

**Alfred M. LILIENTHAL and Middle East Perspective, Inc., Defendants.**

**No. 80 Civ. 3781 (KTD).**

United States District Court, S. D. New York.

July 14, 1980.

Kaplan, Kilsheimer & Foley, New York City, for plaintiff; Robert N. Kaplan, New York City of counsel.

Sargent, Rohm & Van Heemstra, New York City, for defendants; Thomas J. Kane, New York City of counsel.

KEVIN THOMAS DUFFY, District Judge:

This is a motion for a preliminary injunction brought by Dodd, Mead & Company, Inc. [hereinafter referred to as "Dodd Mead"] to stop the distribution and sale of a book entitled *The Zionist Connection* by the defendants Alfred M. Lilienthal and Middle East Perspective, Inc. The parties appeared before me and the operative facts set out hereinafter were in effect stipulated to, thereby obviating the need for a full evidentiary hearing.

On October 10, 1977, the individual defendant Lilienthal signed a contract with the publisher for the publication of a book entitled *The Zionist Connection*. By means of the agreement, Lilienthal granted to Dodd Mead "the exclusive right of printing,

publishing and selling in book form [*The Zionist Connection*] in the United States of America and its dependencies, also Canada and the Philippine Islands during the full term of copyright and all renewals thereof. . . ." Under the contract, Dodd Mead was also given the right to license publication in book form in Great Britain and other foreign countries. Lilienthal further agreed that he would not, "without the consent of the Publishers publish any abridged or other edition of [*The Zionist Connection*] or any book of a similar or competing character." The contract was signed on behalf of the plaintiff by S. Phelps Platt, Jr., the president of Dodd Mead. In addition, Mr. Platt, again on behalf of the corporation, signed a letter, just six days before the contract was executed, which provided:

Dear Dr. Lilienthal:

It is my understanding that you have agreed to purchase in quantity bound copies of THE ZIONIST CONNECTION which we are about to contract with you to publish. This is to assure you we are quite willing to arrange for you to purchase copies, but it is best we let you know in advance our policy and rates in transactions that involve the quantities you propose to purchase.

.    .    .    .    .

I feel we are to publish a fine book that will be well received. This is to assure you that we will make every effort to advertise and promote the volume to the extent that a book of this caliber rightfully deserves.

Thereafter, the publishers obtained a copyright registration in the name of Alfred M. Lilienthal, c/o Middle East Perspective, Inc. indicating that the date of first publication was November 16, 1978. In addition, the registration named Dodd Mead as the authorized agent of the author.

The publisher printed and distributed a total of 15,500 copies of the book between December 11, 1978 and October 10, 1979. In the hearing before me, the defendants admitted that Dodd Mead had expended substantial sums in editing, designing and manufacturing the book, as well as advertising and promoting it. The plaintiff claims, and the defendants agree, that Dodd Mead has continued to list the book in its catalogue. Moreover, the parties agree that during the last six months approximately 100 copies per month have been sold and that the plaintiff has 850 copies of the book presently on hand for sale.

Things, however, apparently have not gone smoothly between the parties. Sometime in 1979, Lilienthal sued the publishers in New York State Supreme Court. This complaint alleges, in essence, that Dodd Mead had breached the agreement by failing to actively promote the book. Apparently a substantial counterclaim has been filed by the publishers in that action. Suffice it to say that the breach of contract action remains in the early pre-trial stages.

Apparently in May, 1980, there was a review of *The Zionist Connection* in a publication entitled "Arab Perspectives." This review indicated that the defendant Lilienthal published "under his own imprint *The Zionist Connection*" and that the new edition of the book "is obtainable for $19.95 from Middle East Perspective, Inc., 850 Seventh Avenue, New York, New York." Dodd Mead arranged to have one of its employees go to the offices of Middle East Perspective, Inc. and purchase a copy of the book mentioned in the review. The book purchased at the offices of Middle East Perspective, Inc. obviously is a reproduction of the book being sold by Dodd Mead. The only substantial changes are the deletion of name of Dodd Mead as publisher and the insertion of Middle East Perspective in its stead. Any other differences are indeed minuscule.

Apparently, the defendants published this edition in December, 1979.

There can be no doubt that the publications in issue are virtually identical and would be viewed as such to the consuming public. Indeed, defendants conceded as much at the hearing. The only defense offered was the claim that by virtue of the action pending in Supreme Court on the

 

contract, this Court is without jurisdiction to hear the instant action. In the alternative, defendants appear to urge that plaintiff's request for injunctive relief be denied since one of the issues which have been presented here will be determined in the state court action. For the reasons stated below, defendants' jurisdictional objection must be dismissed and a preliminary injunction issued.

The contract executed by Dodd Mead and the author assigned to Dodd Mead the exclusive right to print, publish and sell the work. And yet, the author has pirated the work, without regard to the assignment, and has caused it to be published by Middle East Perspective, Inc. The fact that plaintiff may have breached the contract does not effect its rights of exclusive publication until such time that the publication contract, and therefore the assignment, is terminated by the parties or otherwise rescinded.

It is apparent that defendants' state court action seeks monetary damages for an alleged breach of the contract. Under no circumstances could it be construed as an action to rescind the contract. Since it is well settled that an action for breach acts to affirm the contract rather than avoid it, *Sylvania Industrial Corp. v. Lilienfeld's Estate*, 132 F.2d 887, 893 (4th Cir. 1943), the state court action, regardless of its merit, does not alter the contractual assignment of the publication rights by the author to Dodd Mead. This being the case, the assignment by the author to Dodd Mead of the publication right to the work, remains intact.

Section 501(b) of the Copyright Act, 17 U.S.C. § 501(b), provides that the "owner of an exclusive right under a copyright . . [may] institute an action for any infringement of that particular right while he or she is the owner of it." And since it is clear that these exclusive rights may be transferred and owned separately, 17 U.S.C. § 201(b), there can be no doubt that Dodd Mead may assert its exclusive rights of publication and sale of the work. This is precisely what it is doing in the instant suit.

Turning to the request for equitable relief, there is no question that the stringent requirements which obtain in this Circuit have been more than satisfied. Indeed, there is no question that Dodd Mead's exclusive publication rights have been invaded and that irreparable harm may be presumed. *Robert Stigwood Group, Ltd. v. Sperber*, 457 F.2d 50, 55 (2d Cir. 1956). Likewise given the virtually identical publication issued by defendants, there can be no question that the consuming public is likely to be confused as to the source of the work. Thus, given defendants' clear pirating of the work, plaintiff's probability of success on the merits approaches a certainty.

Accordingly, plaintiff's motion for a preliminary injunction is granted.

So ordered.