DODD, MEAD & COMPANY,
INC., Plaintiff,

v.

Alfred M. LILIENTHAL and Middle
East Perspective, Inc., Defendants.

No. 80 Civ. 3781 (KTD).

United States District Court,
S. D. New York.

April 8, 1981.

Kaplan, Kilsheimer & Foley, New York City, for plaintiff; Robert N. Kaplan, New York City, of counsel.

Stern & Reubens, New York City, for plaintiff.

Feinberg, Siff & Herman, New York City, for defendants; Peter S. Herman, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This is a motion and cross-motion for summary judgment brought by the parties pursuant to Rule 56 of Fed.R.Civ.P. The pertinent facts are undisputed.

Defendant Alfred M. Lilienthal ["Lilienthal"] is the author of a literary work entitled *The Zionist Connection.* On October 10, 1977, Lilienthal contracted with a publisher, Dodd Mead Co., Inc. ["Dodd Mead"], for the publication of his book. By means of this agreement, Lilienthal granted to Dodd Mead "the exclusive right of printing,

publishing and selling in book form [*The Zionist Connection*] in the United States of America and its dependencies, also Canada and the Philippine Islands during the full term of copyright and all renewals thereof . . . ." Lilienthal also agreed that he would not, "without the consent of [Dodd Mead,] publish any abridged or other editions of the work or any book of similar or competing character."

Thereafter, Dodd Mead obtained a copyright registration in the name of Alfred M. Lilienthal, c/o Middle East Perspective, Inc. The certificate of copyright registration listed Dodd Mead as the registered agent of the author.

Dodd Mead printed and distributed 14,500 copies of the book between December 11, 1978 and October 10, 1979, and in addition Dodd Mead spent more than $66,000 in manufacturing and promoting the book. The work is currently listed in Dodd Mead's catalogues as well as in *Books In Print*.

In 1979, Lilienthal became dissatisfied with Dodd Mead's publication and marketing efforts. He learned that the book could not be found in many bookstores and that Dodd Mead had stated they would not print any additional books. As a result, he instituted an action upon the contract in New York State Supreme Court in September, 1979, claiming that Dodd Mead had failed to perform adequately under the contract. That action is still pending.

In December, 1979, defendants Lilienthal and Middle East Perspective, Inc. ["MEP"] published an edition of *The Zionist Connection* ["MEP edition"]. The only substantial difference in this edition from the Dodd Mead edition are the deletion of the name of Dodd Mead as publisher and the insertion of Middle East Perspective, Inc. in its place. There is no doubt that the two publications are otherwise identical.

Dodd Mead brought this federal action for damages and injunctive relief based on defendants' alleged piracy of their copyrighted work. In a decision dated July 14, 1980, I granted plaintiff's motion for a preliminary injunction restraining defendants from selling or printing copies of the MEP edition. *See* 495 F.Supp. 135 (S.D.N.Y. 1980). Plaintiff now moves for summary judgment to obtain a permanent injunction and to receive damages.

The issue of whether this court has subject matter jurisdiction to decide plaintiff's claim for copyright infringement has already been decided in the affirmative. *See* 495 F.Supp. at 137. An enforceable copyright in a literary work vests initially in the author or authors of the work. 17 U.S.C. § 201(a). "Any of the exclusive rights comprised in a copyright," however, "may be transferred in whole or in part by any means of conveyance." 17 U.S.C. § 201(d). The owner of such a right may "institute an action for any infringement of that particular right while he or she is the owner of it." 17 U.S.C. § 501(b). In this case, by contract between the parties, Dodd Mead is the owner of the exclusive right to print, publish and sell the work. Therefore, Dodd Mead, the owner of the exclusive right, is entitled to the protections and remedies of the Copyright Act.

The possible breach of contract by Dodd Mead does not necessarily affect its rights of exclusive publication. The defendants' state court action seeking damages for breach of contract acts to affirm the assignment of publication rights rather than avoid it. *See Sylvania Industrial Corp. v. Lilienfeld's Estate*, 132 F.2d 887, 893 (4th Cir. 1943). Thus, this court has jurisdiction to determine whether Lilienthal infringed the exclusive publication rights which had been assigned to Dodd Mead.

Defendants make three principal arguments in opposition to plaintiff's summary judgment motion and in support of their cross-motion for summary judgment. First, defendants argue that according to the terms of the contract between the parties, plaintiff retained the right to buy books at a substantial discount from the publisher and to re-sell them without restriction. When the plaintiff allegedly breached this term of the contract by refusing to print further copies of the book, they were entitled, defendants assert, to "cover" by printing up their own copies. Second, defend-

ants argue that Dodd Mead abandoned the copyright and therefore cannot enforce it. Finally, defendants assert that Lilienthal's first amendment right to disseminate his work to the public precludes Dodd Mead's claim for copyright infringement. For the reasons that follow, these arguments are unavailing.

Defendants contend that a letter signed by S. Phelps Platt, Jr., president of Dodd Mead, six days before the parties entered into the publishing agreement, sets forth the essential terms of the parties' agreement which Dodd Mead supposedly breached. This letter states that Lilienthal agreed to purchase an initial order of not less than 3,000 copies of the first printing at 47 percent off the published retail price. In addition, Dodd Mead agreed that Lilienthal would have the continuing right to purchase books at the same discount on orders of 1,000 or more, and to purchase smaller quantities at a lower discount. Lilienthal asserts that the letter contained no restrictions on resale of the books and that, in fact, Dodd Mead encouraged Lilienthal to go out and sell the book. Finally, Lilienthal claims that Dodd Mead's letter expressed the publisher's continuing obligation to promote the book to "the maximum extent." [Lilienthal Affidavit ¶ 16, p.9].

An important issue raised by this argument is whether the October 4 letter is in any way incorporated into the October 10, 1977 agreement between the parties. This issue, which must be resolved under New York law, need not be disposed of here because even if the letter did constitute the agreement between the parties, Dodd Mead's actions in alleged breach of the agreement did not justify Lilienthal's publication of the book.

Lilienthal argues that Dodd Mead failed to adequately promote the book and to adequately distribute copies to bookstores around the country. Starting in the spring of 1979, Lilienthal began receiving letters from the public indicating that his book was not available in bookstores. Then, Lilienthal learned from his previous publisher that Dodd Mead did not intend to re-print the book. When Lilienthal requested an explanation by Dodd Mead, Dodd Mead stated in a letter dated September 18, 1979 that they did not intend to print more than the 12,500 copies of the book already printed until Lilienthal paid a $42,359.77 debt owed to Dodd Mead. Lilienthal then replied by letter to Dodd Mead stating that he had paid approximately this amount into an escrow account pending his accountant's analysis of the debt.

In October, 1979, Dodd Mead printed an additional 2,000 copies of the book. Lilienthal claims to have had no knowledge of this printing, at least until after October 23, 1979 when Lilienthal signed a contract with another printer to print approximately 2,000 copies of the book.

■ It is Lilienthal's contention that when Dodd Mead failed to publish the book at his request, he had the right to "cover" by substituting books printed at his own expense under the New York Uniform Commercial Code § 2–712.[1] Lilienthal, however, has failed to demonstrate any breach of the contract by Dodd Mead which triggered a right to cover. There is no indication that Dodd Mead failed to meet specific orders for books made by Lilienthal

1. N.Y.U.C.C. Law § 2–711 provides in part:
   (1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, . . . the buyer may cancel and . . . (a) "cover" . . . .
   N.Y.U.C.C. Law § 2–712 provides:
   (1) After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

   (2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (Section 2—715), but less expenses saved in consequence of the seller's breach.
   (3) Failure of the buyer to effect cover within this section does not bar him from any other remedy.

in accordance with the October 4 letter. Lilienthal's major grievance is that Dodd Mead was not printing enough books to keep up with the public's demand. If proven, this may or may not have constituted a breach of contract. Such a determination, however, will have to be made in the state court action. In any case, Dodd Mead's alleged failure to meet the public demand did not permit Lilienthal to publish his own copies in contravention of the contract between the parties. Lilienthal's obvious remedy under these circumstances was to follow the terms of the contract which at paragraph 17 provided:

If at any time during the continuance of this Agreement the work shall be out of print for six months in all editions, including reprints, whether under the imprint of the Publishers or another imprint, and if, after written notification from the Author, the Publishers shall fail to place the work in print within six months from the date of receipt of such notification, then this Agreement will terminate and all of the rights granted to the Publishers here under shall revert to the Author. The Author shall have the right for thirty days after such termination to purchase from the Publishers all copies or sheets (if any) remaining at the cost of manufacture and the plates and engravings of illustrations (if in existence) at one-half their cost to the Publishers, including composition, all f.o.b. point of shipment.

Unfortunately, the record before me does not show that Lilienthal pursued this avenue. He cannot be permitted now to sue for damages on the contract and, at the same time, to breach the contract egregiously by printing his own copies.

Defendants' argument that Dodd Mead abandoned its exclusive right under the copyright is also without merit. In order for the holder of a copyright to abandon his rights thereunder, he must perform some overt act which manifests an intent to surrender rights in the copyrighted material. *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F.Supp. 531, 535 (S.D.

N.Y.1977), *aff'd*, 592 F.2d 651 (2d Cir. 1978); *National Comics Publications, Inc. v. Fawcett Publications, Inc.*, 191 F.2d 594, 598 (2d Cir. 1951); see 3 *Nimmer on Copyrights* § 13.06 (1978). Mere inaction or negative behavior will not suffice. *See Rohauer v. Killiam Shows, Inc.*, 379 F.Supp. 723, 730 (S.D.N.Y.1974), *rev'd on other grounds*, 551 F.2d 484 (2d Cir.), *cert. denied*, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977); *Marvin Worth Productions v. Superior Films Corp.*, 319 F.Supp. 1269, 1273 (S.D.N.Y. 1970).

Here, Dodd Mead never abandoned the copyright in Lilienthal's work. Between December, 1978 and October, 1979, Dodd Mead printed 14,500 copies and spent more than $66,500 on its manufacturing and marketing. There is absolutely no evidence to suggest Dodd Mead intended to give up its exclusive rights in the book.

Finally, Lilienthal submits that his freedom of expression is being abridged, in violation of the first amendment, by Dodd Mead's enforcement of the copyright. The evidence proffered by Lilienthal, however, does not support this claim. There is no indication that he has been prevented from expressing his opinions. Ideas and opinions are not subject to copyright even though the specific form of expression may be. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1170 (9th Cir. 1977). Here, it is not Lilienthal's expression of a particular viewpoint to which Dodd Mead objects. Rather, the act complained of is the unauthorized reproduction and sale of a written work which Dodd Mead has acquired exclusive rights to distribute. There is no first amendment right on the part of Lilienthal to so egregiously breach an exclusive publication contract which he freely entered into.

Plaintiff's motion for summary judgment is therefore granted, and defendants' cross-motion for summary judgment is denied. The defendants are hereby permanently enjoined from publishing, selling, marketing or otherwise disposing of any copies of the book entitled *The Zionist Connection*. The

case is referred to Magistrate Bernikow for an inquest to determine damages.

SO ORDERED.