**LIBRARY PUBLICATIONS, INC.**
**t/a Running Press**

v.

**MEDICAL ECONOMICS COMPANY.**

**Civ. A. No. 79–0336.**

United States District Court,
E. D. Pennsylvania.

Oct. 14, 1982.

**1232**

G. David Rosenblum, Astor, Weiss & Newman, Philadelphia, Pa., for plaintiff.

Michael A. Etkin, Frumer & Etkin, Philadelphia, Pa., for defendant.

## MEMORANDUM

GILES, District Judge.

Medical Economics Company, has moved for summary judgment. Jurisdiction is properly asserted based upon diversity of citizenship and an amount in controversy in excess of $10,000. *See* 28 U.S.C. § 1332(a) (1976). For the following reasons, defendant's motion shall be granted.

Library Publications, Inc., t/a Running Press ("Running Press"), is a trade book publisher and distributor. Medical Economics is the publisher of the Physician's Desk Reference ("PDR") and is the assignee of the copyright interests.[1] Running Press charges Medical Economics with breach of an oral contract, unfair competition, and tortious interference with contractual relations. Medical Economics denies the existence of any agreement with plaintiff and contends that, in any event, the scope of the agreement alleged by plaintiff would render it void, and unenforceable as a matter of law. According to Running Press, defendant orally agreed (1) to give it the right to distribute the PDR to the book trade within the United States and all foreign markets; (2) to refer to it all new book trade accounts; and (3) to sell to Running Press all of its requirements for the PDR. Relying upon the existence of such an agreement, Running Press claims that it contracted with B. Dalton, a bookseller, to supply all of Dalton's requirements for the PDR. Running Press claims that Medical Economics, with full knowledge of this supply agreement with Dalton, improperly contacted Dalton with an offer to sell the PDR directly and thereafter, refused to sell the PDR to Running Press, in breach of the parties' oral contract. Running Press seeks actual, expectancy, and punitive damages.

Medical Economics has moved for summary judgment contending, *inter alia,* that the agreement as alleged by Running Press constitutes an exclusive license to distribute the PDR and would violate section 204(a) of the Copyright Act of 1976, 17 U.S.C. §§ 101–810 (Supp. IV 1980) which requires that such copyright transfer agreements be in writing.

In considering a motion for summary judgment, a court must determine whether there exist any disputed issues of material fact and, if so, whether judgment as a matter of law is appropriate. All reasonable inferences must be drawn in favor of the non-moving party. If, however, the moving party establishes a *prima facie* case, the non-movant must come forward with sufficient evidence to contradict the materials submitted. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Applying these standards, I find that summary judgment in favor of Medical Economics must be granted.

---

1. When this suit was instituted the defendant, Medical Economics Company, was a division of Litton Industries, Inc. which held the copyright on the PDR. Thus, defendant stood in Litton's shoes for purposes of the exercise of copyright interests.

It is undisputed that Medical Economics is the owner of the exclusive right to print, publish and sell the PDR. As such, it is entitled to the protections of the Copyright Act and can transfer, in whole or in part, any of the exclusive rights comprised in a copyright. *See* 17 U.S.C. § 201(d) (Supp. IV 1980).[2] *See also Dodd, Mead & Co., Inc. v. Lilienthal,* 514 F.Supp. 105 (S.D.N.Y. 1981). The Act defines "transfer of copyright ownership" as "an assignment ... *exclusive license,* or any other conveyance ... of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license." 17 U.S.C. § 101 (Supp. IV 1980) (emphasis supplied). Included among the exclusive rights of a copyright owner is the right "to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership ...." 17 U.S.C. § 106(3). Thus, under the Act the owner of a copyright has certain divisible rights which may be transferred in whole or in part by means of an exclusive license. *See Burns v. Rockwood Distributing Co.,* 481 F.Supp. 841 (N.D.Ill. 1979) (section 201(d) of the Act embodies concept of copyright divisibility.) The legislative history of the act elaborates upon the divisibility concept, stating that section 201(d)(2) "contains the first explicit statutory recognition of the divisibility of copyright in our law." H.R. Report, No. 94–1476, 94th Cong.2d Sess. 123, reprinted in [1976] U.S.Code Cong. & Ad.News 5659, 5738. Under this provision, "any of the exclusive rights that go to make up a copyright, including those enumerated in section 106 ... can be transferred and owned separately." *Id.* at 5739. "[T]he principle of divisibility applies whether or not the transfer is 'limited in time or place of effect ....' " *Id.*

Under section 204(a) of the Act, "[a] transfer of copyright ownership other than by operation of law, is not valid unless "an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a) (Supp. IV 1980). It is from this provision of the Act that Medical Economics argues that the alleged oral agreement between the parties was an exclusive license which constitutes a transfer of copyright ownership and which must be in writing to be valid and enforceable.

It is undisputed that there was no writing within the meaning of section 204(a). Running Press argues instead that the parties' agreement was a non-exclusive license since Medical Economics retained the right to sell PDR to its old accounts. As a non-exclusive license, it argues that the agreement need not be in writing to be valid under the Act. While Running Press is correct that a non-exclusive license is valid under the Act even though it is not in writing, I disagree, as a matter of law, with its characterization of the agreement as a non-exclusive license.

The legislative history of section 201 makes it clear that an exclusive license can be limited to given rights at a particular time. For example, a local broadcasting station can hold an exclusive license to transmit a particular work within a particular geographic area for a particular time. H.R. Report, No. 94–1476, 94th Cong., 2nd Sess. 123, *reprinted in* [1976] U.S.Code Cong. & Ad.News 5659, 5739. Furthermore, there appears to be no limit on how narrow the scope of exclusive rights can be yet still constitute a "transfer of ownership," provided the licensed rights are exclusive. *See Nimmer on Copyright* § 10.-02(A) (1982). An exclusive license to a

---

**2.** 17 U.S.C. § 201(d) provides:

(d) Transfer of Ownership.

(1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.

(2) Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

newsstand dealer to distribute a given edition of a given newspaper at a designated corner on a particular afternoon, for example, gives the dealer "ownership" of that right. *Id.*

Even though Medical Economics retained the right to sell PDR to all of its book trade accounts as of October 24, 1978, plaintiff's complaint and the affidavit of plaintiff's president opposing this motion state that Running Press was guaranteed the exclusive right to sell PDR to certain customers in domestic and foreign markets. These customers consisted of all new book trade accounts either solicited by plaintiff or those newly acquired by Medical Economics. Running Press thus had an exclusive right to sell PDR to all new trade accounts who sent orders for the PDR to Medical Economics. Such an agreement, as an exclusive license, would constitute a restriction on the exercise of defendant's copyright interests recognized under the Act. Section 204(a) of the Act requires such agreements to be in writing. Allowing the parties to transfer and divide such interest by oral agreement would contravene the purpose of section 204(a)—to insure the integrity of copyright interests, once granted. Since section 204(a) requires a writing for the valid transfer of copyright interests and here the alleged agreement between the parties was an oral one, it is invalid as a matter of law.

An appropriate order follows.

### ORDER

AND NOW, this 14th day of October, 1982, it is hereby ORDERED that Defendant's Motion for Summary Judgment is GRANTED on the basis of section 204(a) of the Copyright Act of 1976, 17 U.S.C. §§ 101–810 (Supp. IV 1980).