WALES INDUSTRIAL INC., Plaintiff,

v.

HASBRO BRADLEY, INC., Defendant,

and

Benny P. Lueng, Sheila Lieberman, Lieberman & Rosen Associates, Inc. d/b/a Lieberman & Associates, James Knilans d/b/a Knilans & Associates, and Glacier Enterprises Co. Ltd., Additional Defendants on the Counterclaims.

No. 85 Civ. 2049 (EW).

United States District Court,
S.D. New York.

July 3, 1985.

Lilling & Greenspan, White Plains, N.Y., Ballon, Stoll & Itzler, New York City, for plaintiff and third party defendants Benny P. Lueng, Sheila Lieberman, Lieberman & Rosen Associates, Inc., and James Knilans; Burton L. Lilling, Bruce E. Lilling, A. Kate Huffman, White Plains, N.Y., Richard Weinberger, New York City, of counsel.

Parker Auspitz Neesemann & Delehanty, P.C., New York City, for defendants and counterclaim plaintiff Hasbro Bradley, Inc.; Anthony M. Radice, Carroll E. Neesemann, Kim J. Landsman, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This action centers about the validity and alleged infringement of copyrights in a popular new series of convertible robot toys known as "The Transformers," fantasy action figures that can be transformed by manipulation from robots into dinosaurs and other forms. The series, which includes some seventy different figures, is manufactured in Japan by Takara Co., Ltd. ("Takara"), not a party to the action, and is distributed in the United States by defendant Hasbro Bradley, Inc. ("Hasbro") under an exclusive sales license granted by Takara and its American sales subsidiary on November 1, 1983. Thereafter, on November 12, 1984, Takara assigned to Hasbro its rights in the Transformer copyrights for the United States for a period of three years, subject to renewal upon mutual consent. Plaintiff Wales Industrial Inc.

("Wales") plans to import and distribute into the United States its own version of several convertible robot toys, which are manufactured in Taiwan by third party defendant Glacier Enterprises Co., Ltd. ("Glacier"), a Taiwanese company which, though served with process, has not appeared and is in default.

In March 1985, Wales commenced this action against Hasbro seeking a declaratory judgment that Hasbro's claims to copyrights in the Transformers are invalid and that Wales's planned sales of its then yet to be imported products will not infringe any such copyrights. Wales also moved for a preliminary injunction enjoining Hasbro from taking legal action against or from otherwise interfering with Wales's sales effort. In an opinion dated March 30, 1985, familiarity with which is assumed,[1] the Court denied Wales's motion. 612 F.Supp. 507.

Thereafter, Hasbro asserted counterclaims against Wales and third party claims against Wales's principal, Benny Leung, and its supplier, Glacier, charging them with violations of federal copyright and trademark law as well as New York law. Specifically, it charges they have advertised, promoted, and solicited sales of convertible robot toys in the United States that are copied from and are substantially similar to the sculptural expressions in five Transformers known as "Slag," "Sludge," "Grimlock," "Topspin," and "Perceptor." Hasbro further charges that James Knilans and Lieberman & Rosen Associates, Inc. ("LRA"), as Wales's sales representatives, and Sheila Lieberman, as LRA's president, have participated in and furthered the illegal sales effort by Wales, and they are also named as third party defendants.

Wales and all third party defendants now move pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(7) to dismiss Hasbro's counterclaims and third party claims for lack of subject matter jurisdiction and failure to join Takara as an indispensable party. In addi-

---

**1.** *Wales Indus. Inc. v. Hasbro Bradley, Inc.,* 612 F.Supp. 507 (1985).

tion, Knilans, LRA, and Lieberman move for dismissal upon the ground that they are not responsible for any infringing activity in which they may have engaged on Wales's behalf. Hasbro opposes the motions and cross-moves for a preliminary injunction enjoining Wales and those acting in concert with it from importing or distributing three convertible robot toys that Glacier allegedly copied from three Transformers—Slag, Sludge, and Grimlock—and has already shipped to Wales for sale in the United States.

## LACK OF SUBJECT MATTER JURISDICTION

 Wales and the other movants first contend that Hasbro may not sue for infringement of any Transformer copyrights because the putative assignment of these copyrights to Hasbro is limited to a term of three years and thus is not an assignment but at most merely an exclusive license to distribute and sell the toys for a limited period and in a specified territory. By the document executed November 12, 1984,

> Takara does hereby sell, assign, transfer and set over to Hasbro the entire right, title and interest to any copyrights on the [Transformer] designs for the United States of America, including the right to apply for ... and own copyrights thereon in those countries for a term of three (3) years subject to the terms of the Agreement of November 1, 1983, at the conclusion of which, unless renewed for additional terms by mutual consent, Hasbro agrees to assign back to Takara, free of any charge, all of the rights assigned herein, including any copyrights covering said rights that may be issued.[2]

On its face, the document purports to transfer to Hasbro rights in the Transformer copyrights that are exclusive but limited in time and place of effect. Under the doctrine of divisibility, embodied in the Copyright Act of 1976 (the "Act"),[3] whereby a copyright owner may transfer less than all of his copyrights, such a grant would constitute a "transfer of copyright ownership" and would entitle Hasbro, to the extent of any particular exclusive right it acquired, "to all of the protection and remedies accorded to the copyright owner" by the Act.[4] For purposes of invoking the protection of the Act, it is the exclusiveness of the rights transferred, not an absence of temporal or geographic limitations upon them, that is essential.[5] Thus, whether the document executed by Takara on November 12, 1984 is denominated an assignment or an exclusive license is of no consequence for purposes of subject matter jurisdiction. The Act expressly authorizes the "legal or beneficial owner of an exclusive right under a copyright," subject to the recordation and registration requirements, discussed hereafter, "to institute an action for any infringement of that particular right committed while he or she is the owner of it." [6]

 The copyright grant executed by Takara on November 12, 1984 was recorded by Hasbro in the United States Copyright Office on April 22, 1985. Thus, the recordation prerequisite to an infringement action by a transferee of an exclusive right under a copyright was satisfied.[7] That recordation occurred some five weeks after this action was commenced is irrelevant; it is sufficient that it occurred before the hearing on the instant motion.[8] Thus, the

---

**2.** Answer and amended counterclaims, exhibit D.

**3.** 17 U.S.C. §§ 101–914.

**4.** 17 U.S.C. §§ 101, 201(d)(2).

**5.** *See Library Publications, Inc. v. Medical Economics Co.,* 548 F.Supp. 1231 (E.D.Pa.1982), *aff'd,* 714 F.2d 123 (3d Cir.1983) (mem.); 3 M. Nimmer, Nimmer on Copyright § 10.02[A], at 10–20 to 10–21 (1985) (quoting H.Rep. No. 94–1476, 94th Cong., 2d Sess. 123 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5739).

**6.** 17 U.S.C. § 501(b); *see Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 36 (2d Cir.1982).

**7.** 17 U.S.C. § 205(d).

**8.** *See Meta-Film Assocs., Inc. v. MCA, Inc.,* 586 F.Supp. 1346, 1350–52 (C.D.Cal.1984); *Dan-Dee Imports, Inc. v. Well-Made Toy Mfg. Corp.,* 524 F.Supp. 615, 619 (E.D.N.Y.1981); *Co-Opportunities, Inc. v. National Broadcasting Co.,* 510 F.Supp. 43, 48–49 (N.D.Cal.1981).

jurisdictional requirement of recordation was satisfied.

Wales and the other movants contend that a further jurisdictional requirement, registration of the Transformer copyrights, has not been satisfied. Section 411(a) of Title 17 provides that "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title." Registration of a copyright claim is a jurisdictional prerequisite to a suit for infringement.[9] Under section 409, a registration application must identify the "copyright claimant" and indicate how the claimant, if it is not the author, obtained ownership of the copyright. The term "copyright claimant" is not defined in the statute and one must look to the regulations of the United States Copyright Office. In this case, Hasbro filed registration applications for the Transformers identifying itself as the copyright claimant "[b]y assignment from Takara." The movants contend these registrations are invalid because Hasbro is not a "copyright claimant" as that term is defined in the regulations. The latter define a "copyright claimant" as either the "author of a work" or a "person or organization that has obtained ownership of *all* rights under the copyright initially belonging to the author."[10] According to the movants, since Takara is identified in the registrations as the author of the Transformers, and since, under the document of November 12, 1984, Hasbro did not obtain "ownership of *all* rights under the copyright initially belonging to the author [Takara]," but only limited rights in the Transformer copyrights, Hasbro does not qualify as a copyright claimant under either prong of the definition.

■ If, as is claimed, Hasbro erroneously identified itself on the registrations as the "copyright claimant," in contravention of the statute and regulations, this alleged error would not invalidate the registrations. Even if Hasbro were not a "copyright claimant," it is, under the movants' own reading of the November 12 document, the owner of an exclusive right, limited in time and place of effect, in the Transformers, and as such it would be entitled under the Act and the regulations to submit applications for and obtain registration of the copyright claims in those works.[11] Thus, Hasbro's error, if any, would not be jurisdictional but a technical misdescription: it should have identified Takara rather than itself as the "copyright claimant" on the registration applications it submitted. Such error could be readily corrected by Hasbro's filing supplementary registrations with the Copyright Office.[12] Since there is no indication that the claimed error was committed knowingly, and since identification of the copyright claimant as Takara rather than Hasbro would not have occasioned rejection of the applications by the Copyright Office, the alleged error would not require dismissal of Hasbro's infringement claims.[13]

Wales and the other movants contend the registrations of four of the five Transformers are invalid for still another but different reason. As to three of the toys, Slag, Sludge, and Grimlock, Hasbro registered copyright claims in July 1984, some four months before Takara executed the copyright grant on November 12, 1984. Thus, the Movants argue, Hasbro registered the claims to these three toys before it was entitled to do so and its counterclaim for

9. *Techniques, Inc. v. Rohn,* 592 F.Supp. 1195, 1197 (S.D.N.Y.1984); *International Trade Management, Inc. v. United States,* 553 F.Supp. 402, 1 Cl.Ct. 39 (1982); *Charron v. Meaux,* 60 F.R.D. 619, 624 (S.D.N.Y.1973).

10. 37 C.F.R. § 202.3(a)(3) (emphasis added).

11. 17 U.S.C. § 408(a); 37 C.F.R. § 202.3(c)(1).

12. *See* U.S.C. § 408(d); 37 C.F.R. § 201.5.

13. *See Eckes v. Card Prices Update,* 736 F.2d 859, 861–62 (2d Cir.1984); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 827–28 (11th Cir.1982); *Thomas Wilson & Co. v. Irving Dorfman Co.,* 433 F.2d 409, 412 (2d Cir. 1970), *cert. denied,* 401 U.S. 977, 91 S.Ct. 1200, 28 L.Ed.2d 326 (1971); *Russ Berrie & Co. v. Jerry Elsner Co.,* 482 F.Supp. 980, 988 (S.D.N.Y. 1980).

**516**

infringement must be dismissed. Hasbro responds, however, that Takara actually transferred the rights in the Transformer copyrights by prior oral assignments, in April and May 1984, several months before the July registrations, and that the document executed by Takara on November 12, 1984 confirmed the prior oral assignments.

■■■ A transfer of copyright ownership, either by means of an assignment or an exclusive license, "is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed." [14] This requirement is satisfied, however, by the owner's later execution of a writing that confirms a prior oral agreement, at least where, as here, there is no evidence of any dispute between the owner and licensee as to the validity of the alleged oral grant. [15] The movants dispute Hasbro's claim that the document executed by Takara on November 12, 1984 was a written confirmation of the alleged oral assignments in April and May 1984. They emphasize that the decretal paragraph of the document speaks in the present tense and makes no reference to any prior oral assignment. However, the effective date of the document is not indicated and, although the document contains no reference to the alleged oral assignments, it is expressly made subject to the sales license agreement entered into by Takara, its American subsidiary, and Hasbro on November 1, 1983. Thus, Hasbro's proffered reading of the document as confirming prior oral assignments is " 'fairly reasonable.' " [16] There are material issues of fact as to whether Takara made such oral assignments and whether Takara and Hasbro

intended the November 12, 1984 document to confirm them. These issues foreclose dismissal of Hasbro's copyright claims before it has had an opportunity to present extrinsic evidence of Takara's and its intentions concerning the document. [17] Hasbro's registration of the Slag, Sludge, and Grimlock copyright claims must be presumed valid for purposes of this motion. [18] As to Perceptor, however, Hasbro concedes it is not mentioned in the November 12 document and withdraws its copyright claims.

Accordingly, the motion to dismiss the copyright counterclaim and third party claims for lack of subject matter jurisdiction is denied as to all toys in issue except Perceptor.

## FAILURE TO JOIN AN INDISPENSABLE PARTY

Wales and the other movants next contend that Takara, as author of the Transformers, is an indispensable party to the action in whose absence the copyright claims must be dismissed pursuant to Fed. R.Civ.P. 12(b)(7) and 19. They argue that because the validity of the Transformer copyrights is in issue, and because Takara granted Hasbro rights therein for a period of only three years, thereby retaining ownership of such rights for the balance of the seventy-five year statutory life of each copyright in the United States, a determination by this Court that the copyrights are invalid or unenforceable in this country would adversely affect the rights and interests of Takara, not a party to the action. In its complaint and opposition to Hasbro's motion for a preliminary injunction, discussed hereafter, Wales asserts that Takara, prior to granting the rights in issue

---

**14.** 17 U.S.C. § 204(a).

**15.** *See Eden Toys,* 697 F.2d at 36.

**16.** *See Wards Co. v. Stamford Ridgeway Assocs.,* 761 F.2d 117, 120–121 (2d Cir.1985) (quoting *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983) ).

**17.** *See Wards,* at 120; *Schering Corp.,* 712 F.2d at 9; *see also Dan-Dee Imports,* 524 F.Supp. at 617–19 (written assignment stating present

transfer but referring to prior oral agreement allegedly including an assignment presents fact issue whether parties intended writing to confirm alleged prior oral assignment).

**18.** *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); *Grand Union Co. v. Cord Meyer Dev. Corp.,* 735 F.2d 714, 717 n. 1 (2d Cir.1984).

to Hasbro, offered for sale in Japan two convertible robot toys without copyright notice affixed thereto and that these toys, along with the Transformers subsequently modeled on them, are in the public domain. Thus, the validity of the underlying copyrights in at least two Transformers is in issue and ultimately must be determined by the Court. As a nonparty, of course, Takara would not be bound by a judgment of this Court declaring such copyrights invalid; nevertheless, such a judgment may, as a practical matter, impair or impede Takara's ability to protect its interest in the subject matter of the action.[19]

Of greater significance, alluded to by the movants but without elaboration, is that Hasbro's failure to join Takara will subject the movants to a risk of multiple lawsuits and inconsistent judgments concerning the validity of the Transformer copyrights. In the event Wales prevails upon its claim that some of the Transformers are in the public domain, and thereafter proceeds to distribute its own version of these toys, it could be sued for infringement again, this time by Takara, which, as already noted, would not be bound by the Court's prior judgment. Thus, joining Takara as a party to this action would enable Wales "to respond in one action to all claims of infringement for [its] act, and thus either to defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions."[20] In addition, and not to be disregarded, there is the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.[21]

■ For the foregoing reasons, joinder of Takara as a party to the action is desirable. The recently enacted Copyright Act vests discretion in the Court to "require the joinder ... of any person having or claiming an interest in the copyright."[22] Absent special circumstances joinder should be required in cases challenging the validity of the copyright upon which rest the rights of the person to be joined and should not be required if the only issue is whether the defendant engaged in unlawful copying.[23] Here, there is both a challenge to the validity of some of the Transformer copyrights and a charge of infringement. In addition, under prior copyright law, an author who transferred something less than full ownership of his copyright, such as an exclusive right to sell copies of his work in a limited territory for a limited time, was an indispensable party to an action in which the validity of the copyright was to be determined, and in his absence the action could not be maintained. To mitigate the harshness of this rule, the Supreme Court, in *Independent Wireless Telegraph Co. v. Radio Corp.*,[24] held that an exclusive licensee could join the licensor as an involuntary plaintiff who would be bound by any judgment rendered if the licensor first were invited to join, refused to do so, and could not be served with process in any jurisdiction where the licensee could obtain effective relief.[25]

■ As noted, the new Act vests discretion in the Court concerning joinder. In light of the facts developed on these motions with respect to the validity of the copyrights, Takara should be joined as a

---

**19.** *See Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968); Fed.R.Civ.P. 19(a)(2)(i).

**20.** *Independent Wireless Tel. Co. v. Radio Corp.,* 269 U.S. 459, 468, 46 S.Ct. 166, 169, 70 L.Ed. 357 (1926).

**21.** *See Provident Tradesmens Bank,* 390 U.S. at 111, 88 S.Ct. at 738.

**22.** 17 U.S.C. § 501(b); *see* H.Rep. No. 91–1476, 94 Cong., 2d Sess., at 159, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5775.

**23.** *See Swarovski America Ltd. v. Silver Deer Ltd.,* 537 F.Supp. 1201, 1206–07 (D.Colo.1982); 3

M. Nimmer, Nimmer on Copyright § 12.03, at 12–31 (1985).

**24.** 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926).

**25.** *See id.* at 473, 46 S.Ct. at 171; *Followay Prods., Inc. v. Maurer,* 603 F.2d 72, 74–76 (9th Cir.1979); *First Financial Marketing Servs. Group, Inc. v. Field Promotions, Inc.,* 286 F.Supp. 295 (S.D.N.Y.1968); *Manning v. Miller Music Corp.,* 174 F.Supp. 192, 196–97 (S.D.N.Y. 1959).

party. Therefore, Hasbro is directed to request Takara to join with it as a party to this litigation. If, within ten days from date, Takara fails to do so, then Hasbro is directed to amend its counterclaims and third party claims to include Takara as a co-party and, pursuant to 17 U.S.C. § 501(b), to serve written notice of the action with copies of the amended pleadings upon Takara. Thereupon, pursuant to Rules 19(b) and 21, and the Supreme Court's decision in *Independent Wireless*, Takara shall be an involuntary counterclaim plaintiff and third party plaintiff and thus bound by the judgment of the Court.[26]

Accordingly, upon Hasbro's compliance with the foregoing direction, the motion to dismiss the counterclaim and third party claim for failure to join an indispensable party is denied; otherwise it is granted.

## THE CLAIMS AGAINST THE SALES REPRESENTATIVES

■■■■ The third party defendants Knilans, LRA, and Lieberman move to dismiss Hasbro's claims against them upon general allegations that their conduct in furthering the sale and distribution of the alleged infringing products was performed as independent sales representatives, in which capacity they served not only Wales but others; that their services in advertising and promoting sales of the products were performed on a commission basis; and that they had no interest in or control over Wales or Glacier, were not their employees, and had no involvement in the conception or development of the products. However, it is well settled that one who knowingly induces, causes, or materially contributes to the infringing conduct of another may be held liable as a "contributory" infringing-

er.[27] If the conduct of Wales and Glacier is found to have infringed the Transformer copyrights, then Knilans, LRA, and Lieberman may be held jointly and severally liable with Glacier and Wales upon proof that each knew or should have known of the latter's infringing activity and participated in or furthered it.[28] Whether these defendants had actual or constructive knowledge of the alleged infringement and whether they played a sufficient role in furthering it are fact issues that may not be resolved upon this motion. So, too, Lieberman's claim that she engaged in the solicitation effort solely in her capacity as an employee and officer of LRA cannot be resolved now. An individual who causes a corporate defendant to infringe copyrights and personally participates in the infringing activity is jointly and severally liable with the corporation for the infringement.[29] Resolution of this fact issue must also await trial.

Accordingly, the motion by third party defendants Knilans, LRA, and Lieberman to dismiss Hasbro's third party claims against them is denied.

## PUBLICATION WITHOUT NOTICE OF COPYRIGHT

As already noted, Wales charges that some of the Transformers here in issue are in the public domain. This charge is made in opposition to Hasbro's motion for a preliminary injunction but will be addressed separately for convenience.

■■■■ First, as to two Transformers, Slag and Grimlock, Wales asserts that copyright notices are visible only when the toys are in their robot, and not their dinosaur, configurations. Since Hasbro has registered sepa-

**26.** See *First Financial Marketing Servs.*, 286 F.Supp. at 299.

**27.** *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir.1984); *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971).

**28.** *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*, 256 F.Supp. 399, 403 (S.D.N.Y. 1966); cf. *Stix Prods., Inc. v. United Merchants &*

*Mfgs., Inc.*, 295 F.Supp. 479, 499–500 (S.D.N.Y. 1968) (trademark infringement).

**29.** *Columbia Pictures*, 749 F.2d at 160; *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F.Supp. 730, 733 (S.D.N.Y.1981); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F.Supp. 531, 537 (S.D.N.Y.1977), aff'd, 592 F.2d 651 (2d Cir.1978); *Samet & Wells, Inc. v. Shalom Toy Co.*, 429 F.Supp. 895, 903–04 (E.D.N.Y. 1977), aff'd, 578 F.2d 1369 (2d Cir.1978) (mem.).

rate copyright claims for each configuration, Wales asserts, it should have affixed separate copyright notices to each and having failed to do so forfeited any copyrights in the dinosaur configurations of these two toys. This charge is directly contrary to the tradition of construing the notice requirement liberally.[30] A notice consisting of the copyright symbol, Takara's name, and the date of first publication is stamped on an integral, nondetachable part of each toy and is easily visible when the toy is manipulated into its robot configuration, as it is intended to be, and fully satisfies the statutory requirement that reasonable notice of a copyright claim be given.[31]

Second, as to the Slag and Sludge toys, Wales contends that Takara displayed the original versions of these toys at the 1984 Tokyo Toy Show without copyright notices affixed to them, thereby placing these versions and the two Transformers modeled upon them into the public domain.[32] Wales contends that Takara's omission is incurable under 17 U.S.C. § 405(a)(2) because it was intentional. Hasbro responds that only Takara's version of the Slag toy was published without notice; that the omission was inadvertent since this version was intended for sale only in Japan where there is no copyright protection for toy sculptures and as soon as Takara decided to manufacture the Slag toy for sale to Hasbro in the United States it began printing copyright notices on this item; and that Hasbro cured the omission by promptly registering the Transformer copyrights and selling in the United States only Transformers bearing notices.

 While the authorities are divided as to whether an intentional omission of copyright notice from an authorized copy is curable under section 405(a)(2), those cases involved publications in the United States.[33] When a foreign author publishes copies of his work without notice in his own country, and thereafter assigns his copyrights or grants an exclusive license therein for purposes of publication in the United States, the assignee or exclusive licensee can cure the omission with respect to copyright protection in this country by placing notices on all copies distributed under its own authority in this country and elsewhere and by registering the works with the Copyright Office within five years after their initial publication by the foreign author.[34] In this instance, as already discussed, Hasbro made valid registrations of the Transformer copyrights in 1984, well within five years after Takara first published a version of the Slag toy (or any other Transformer) without notice. In addition, the evidence indicates that Hasbro has distributed all of its Transformers with proper notices.[35]

Wales does not dispute this last point. Rather, it relies solely upon an affidavit by a sales representative who states that he purchased "five Takara Dinosaur/Robot toys" in a Los Angeles toy store on June 19, 1985 and that all but one lacked no-

---

**30.** See Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F.2d 851, 853–54 (2d Cir.), cert. denied, 389 U.S. 801, 88 S.Ct. 9, 19 L.Ed.2d 56 (1967).

**31.** 17 U.S.C. § 401(b), (c); 37 C.F.R. § 201.20(c), (i)(2); see Uneeda Doll Co., 373 F.2d at 853–54; Boucher v. DuBoyes, Inc., 253 F.2d 948 (2d Cir.), cert. denied, 357 U.S. 936, 78 S.Ct. 1384, 2 L.Ed.2d 1550 (1958); Scarves by Vera, Inc. v. United Merchants & Mfgs., Inc., 173 F.Supp. 625 (S.D.N.Y.1959).

**32.** See Shapiro & Son Bedspread Corp. v. Royal Mills Assocs., 764 F.2d 69, 72–73 (2d Cir.1985).

**33.** Compare Beacon Looms, Inc. v. S. Lichtenberg & Co., 552 F.Supp. 1305, 1310–12 (S.D.N.Y. 1982), with O'Neill Devs., Inc. v. Galen Kilburn, Inc., 524 F.Supp. 710 (N.D.Ga.1981).

**34.** See Midway Mfg. Co. v. Artic Int'l, Inc., 547 F.Supp. 999, 1008 (N.D.Ill.1982), aff'd, 704 F.2d 1009, 1013 (7th Cir.), cert. denied, — U.S. —, 104 S.Ct. 90, 78 L.Ed.2d 98 (1983).

**35.** Hasbro's Product Manager/Boys Toys asserts there have been no sales of Transformers, and specifically none of the Slag and Sludge toys, in the United States or other countries as to which Hasbro obtained rights from Takara without a copyright notice printed on each toy, package, and related advertising. Affidavit of David A. Kelman at ¶ 18. In addition, Takara's Japanese counsel asserts that all toys exported by Takara to the United States for sale by Hasbro have contained copyright notices. Affidavit of Saiji Tanaka at ¶ 6.

tice.[36] These toys are not identified as Transformers and have nothing to do with the toys in issue. Essentially, Wales's contention is that Takara's initial omission of copyright notice on the products sold in Japan cannot be cured unless *all* convertible robot toys distributed by Takara, not just the Transformers sold to Hasbro, have notices printed on them. However, the notice requirements of section 401 and the cure provisions of section 405(a) apply to copies distributed "by authority of the copyright owner"—in this case, Hasbro. There is no evidence that Hasbro authorized the sale of any of Takara's convertible robot toys other than Transformers, either in the United States or elsewhere.[37] Absent such evidence, sales of Takara's convertible robot toys other than Transformers, even those allegedly sold in this country, are not distributed "by authority of the copyright owner" and are of no consequence in this action.[38]

Finally, Wales contends that, at worst, it is an "innocent infringer" who acted upon a good faith belief that the Transformers were in the public domain and therefore Hasbro's relief, if any, should be an involuntary license granted to Wales pursuant to 17 U.S.C. § 405(b). However, Wales did not enter into its initial contract with Glacier until after its National Sales Manager had received formal notification of Hasbro's copyright claim from its attorneys. Moreover, even an innocent infringer may be enjoined from engaging in infringing activity.[39] Thus, whether Wales is an "innocent infringer" entitled to an involuntary license is a fact issue to be resolved at trial.

Accordingly, at this stage of the litigation, the various attacks levelled against the validity of the Transformer copyrights claimed by Hasbro must fail, and the motions to dismiss Hasbro's counterclaims and third party claims are denied.

## HASBRO'S MOTION FOR A PRELIMINARY INJUNCTION

Hasbro moves for a preliminary injunction to enjoin Wales, the third party defendants, and others acting in concert with Wales from importing, distributing, or selling any toys with sculptural expressions substantially similar to those of three Transformers, Slag, Sludge, and Grimlock. Despite Wales's various attacks upon the validity of Hasbro's claim to copyright relief, the above discussion and disposition of the dismissal motions indicate that Hasbro is likely to prevail upon a trial and establish the validity of the Transformer copyrights and its claimed rights thereunder. As to the infringement of those rights, an inspection of the toys in issue, as well as Wales's admission that Glacier initially copied Takara's toys and then modified the copies at Wales's urging to avoid a lawsuit for infringement, amply supports the charge of unlawful copying, as the Court observed in its prior opinion.

By itself, however, a probability of success upon the merits does not entitle Hasbro to preliminary injunctive relief. It is a sina qua non of such relief that Hasbro must also establish irreparable injury.[40] Under a well established rule in this Circuit, a prima facie case of copyright infringement gives rise to a presumption of

**36.** Affidavit of Don Melcher at ¶¶ 2–3.

**37.** Indeed, representatives of Hasbro, Takara, and Takara's American subsidiary all assert that such sales in this country by anyone other than Hasbro are prohibited under the sales license agreement of November 1, 1983. Affidavit of Leo Hoffman at ¶¶ 2–4; Kelman aff. at ¶ 19; Tanaka aff. at ¶ 2.

**38.** *See Nintendo of America, Inc. v. Elcon Indus., Inc.,* 564 F.Supp. 937, 943–44 (E.D.Mich.1982); *see also Twentieth Century-Fox Film Corp. v.*

*Dunnahoo,* 637 F.2d 1338, 1343 (9th Cir.1981); *H.M. Kolbe Co. v. Armgus Textile Co.,* 315 F.2d 70, 74 (2d Cir.1963); *Goldman-Morgen, Inc. v. Dan Brechner & Co.,* 411 F.Supp. 382, 390 (S.D. N.Y.1976).

**39.** *See* 17 U.S.C. § 405(b).

**40.** *See Citibank, N.A. v. Citytrust & Citytrust Bancorp., Inc.,* 756 F.2d 273, 275 (2d Cir.1985) (quoting *Bell & Howell: Mamiya Co.,* 719 F.2d 42, 45 (2d Cir.1983) ).

irreparable injury—at least, the allegations of irreparable harm need not be very detailed.[41] Hasbro's allegation that it is the largest toy company in the United States and enjoys a reputation for high quality toy distribution attributable in large part to the safety of its products and conformance to United States governmental and industry safety standards for toys is unchallenged. Hasbro's principal contention of irreparable harm is that its well established reputation as a leader in the toy industry in the United States will be tarnished because the plaintiff's alleged infringing products are of inferior quality and may not meet federal or industry child safety requirements. Hasbro also contends that the distribution of such products, in imitation of its own, will have a serious impact upon its relationship with existing licensees and will deter potential licensees from making purchases.

Wales, while not conceding that Hasbro will suffer irreparable injury, contends that by its delay in applying for preliminary injunctive relief Hasbro has waived any right thereto. Wales instituted this action on March 15, 1985 and simultaneously applied for injunctive relief, which, as already noted, was denied. Hasbro asserted its counterclaims against plaintiff and third party claims against others on April 9 and thereafter amended them on June 7, 1985. Hasbro's instant motion was not filed until June 20, 1985, after Wales and the others made their respective motions to dismiss Hasbro's claims and counterclaims. As to alleged delay, Hasbro responds (1) that it and its attorneys were led to believe that Wales would abandon its contracts with Glacier after the Court had denied Wales's application for injunctive relief as, indeed, Wales itself had represented would follow if the relief it requested were denied; (2) that counsel for Wales and Hasbro engaged in ongoing settlement discussions following the denial of Wales's preliminary

injunction motion; and (3) that Hasbro did not learn that Wales was beginning to import Glacier's toys until plaintiff's document production on May 29, 1985 and depositions that were taken on May 31 and June 5, 1985. These disclosed that to date, in April and May, Wales imported and shipped to customers only some 8000 pieces but that it has placed further orders with Glacier, as yet undelivered.

■■■ Hasbro's allegation that it first learned on May 29, 1985 that Glacier had actually shipped the alleged infringing products to Wales is unchallenged. So, too, that serious settlement discussions in fact were in progress during the pendency of the foregoing matters was voluntarily adverted to by plaintiff's attorney during the argument of this motion. While Hasbro might have been more alert by cross-moving for injunctive relief when plaintiff made its initial application, the reasons noted above adequately explain the relatively slight delay in presenting the instant application.[42]

■■■ I am of the view that Hasbro is entitled to the requested preliminary injunction. It has sufficiently established the threat of irreparable harm in the absence of an injunction and has further established not one but both prongs of the prevailing rule in this Circuit: (1) a likelihood of success on the merits and (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor.[43] Hasbro's claim, if established, that Wales and others are engaged in the distribution of inferior products in imitation of Hasbro's—products that may not comply with federal or industry child safety standards—and that such distribution may adversely affect Hasbro's reputation as a distributor of high quality

**41.** *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978).

**42.** *Compare Citytrust & Citytrust Bancorp*, 756 F.2d at 276–77.

**43.** *Buckingham Corp. v. Karp*, 762 F.2d 257, 261 (2d Cir.1985); *Sperry Int'l Trade, Inc. v. Government of Israel*, 670 F.2d 8, 11 (2d Cir.1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

children's toys and reduce the demand for its products from existing customers and interfere with prospective business from others, meets the test of irreparable injury.

Finally, the equities of the situation warrant the requested relief. As demonstrated by its contract with Glacier, Wales embarked upon a deliberate and calculated policy that it knew would be challenged by the owner of the Transformer copyrights. Wales did not contract with Glacier for the manufacture of what Hasbro terms the "knockoff" toys until March 10, 1985 (and backdated its contract to January 15, 1985), two months after it not only had specific notice of the copyright registration by Hasbro but after Hasbro had marketed millions of pieces of Transformers and spent millions of dollars in advertising. In contrast, to date, Wales has imported and sold only some 8000 pieces, a minute quantity compared to the estimated total sales by Hasbro in 1985 of some forty-eight million pieces. Any injury to Wales is de minimis and can readily be compensated by monetary damages in the event it should be the prevailing party after a trial. On the other hand, the injury to Hasbro in loss of prestige with the public and its existing and potential customers is incalculable. Furthermore, Wales, in the event it does not prevail at trial upon its major claims, may be entitled to a license from Hasbro pursuant to 17 U.S.C. § 405(b), relief it has requested upon the ground that its alleged infringement was innocent and in good faith. As this Court previously noted in denying Wales's initial application, "it is clear that plaintiff embarked upon its present course of business with full knowledge that its sales efforts might be met with claims of copyright infringement. . . . Plaintiff was well aware of the legal risk involved in selling its toys, but chose to undertake that risk. . . ." [44] In short, Wales undertook its alleged infringing conduct with its eyes wide open and cannot now be heard to complain if its activity is

stayed until a final determination upon the merits of the action.

Submit order.[45]

---

**44.** *Wales,* at 508–509.

**45.** After this opinion was in final form and about to be filed, both sides submitted addition-

al material without authorization from the Court. The Court has not considered this material in disposing of the instant motions.