**Hung TANG d/b/a Hyun Jin's Video**

**v.**

**Ho Yong HWANG d/b/a Ko Ba Woo Video, John Doe d/b/a Han A Rum Video, Kyung Park d/b/a Ga Go Pa Food Market, John Doe d/b/a Dan Kol Oriental Market, John Doe d/b/a Lotte Oriental Super Video, John Doe d/b/a Treon's Cut Rate, John Doe d/b/a Asian Food Market, John Doe d/b/a Koa Video.**

**Civ. A. No. 92–3016.**

United States District Court,
E.D. Pennsylvania.

July 13, 1992.

Frank Benasutti, Wynnewood, Pa., for plaintiff.

Kirk T. Karaszkiewicz, John V. Silverio, Eckert Seamans Cherin & Mellott, Philadelphia, Pa., for defendants.

## MEMORANDUM

BARTLE, District Judge.

The plaintiff, Hung Jung Tang d/b/a as Hyun Jin's Video ("Tang"), has instituted suit against nine defendant retail video store owners [1] for copyright infringement under 17 ·U.S.C. § 101 et seq. Plaintiff contends that the defendants are copying, renting or selling video copies of Korean television shows in violation of Plaintiff's exclusive distribution rights. Before the Court is plaintiff's motion for a preliminary injunction and impoundment. The Court held a hearing and now makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.[2]

Korean Broadcasting System ("KBS"), of Seoul, Korea, produces Korean language television shows for television broadcast in Korea. Munwha Broadcasting Company ("MBC") also produces shows for television broadcast in Korea. KBS and MBC have assigned to Korean Television Enterprises, Ltd. ("KTE"), a California corporation and wholly owned subsidiary of KBS, all rights to distribute Korean video programs in the United States.[3] Dae Han Video Produc-

---

**1.** The named defendants: Ho Yong Hwang d/b/a Ko Ba Woo Video; Jung Hun ·Nam d/b/a Han A Rum Video; Jang Hee Lee d/b/a Korean Video Rental; Kyung Park d/b/a Ga Go Pa Food Market; Myong Ja Kim d/b/a Dan Kol Oriental Market; Jung Hi Lee d/b/a Lotte Oriental; Man Su Ha d/b/a Treon's Cut Rate; Won Chang Choi d/b/a Asian Food Market; and Soon Hwa Kang d/b/a Koa Video.

**2.** This court has subject matter jurisdiction over this action, arising under the copyright laws of the United States, 17 U.S.C. § 101 et seq., pursuant to 28 U.S.C. § 1338(a).

**3.** In *Korean Television Enterprises, Ltd. v. Nekohyang Oriental Market, Inc. et al.,* Civil Action No. 87–1830, 1988 WL 33953 (March 31, 1988) in the Eastern District of Pennsylvania, Judge

tions, Inc.[4] ("Dae Han"), a New York corporation, is the exclusive licensee for home video distribution in the Eastern United States of Korean language video tapes owned by KTE. Dae Han, in turn, granted plaintiff Tang an exclusive sublicense to distribute the Korean language videos. The sublicense agreement grants Tang "the exclusive right to distribute, broadcast, copy, sell and rent" within the Commonwealth of Pennsylvania and southern New Jersey all the Korean Television Shows produced by KBS and MBC after January 31, 1992. Exclusive Sublicense Agreement dated May 9, 1990, ¶ 2.

Seoul Broadcasting System ("SBS") is also a production company and television network that produces television shows in the Republic of Korea. SBS entered into an agreement with SBS USA, Inc., a 100% owned subsidiary of SBS. By virtue of this agreement, Sae Young Yooh, President of SBS in Korea, gave Sang Yul Chun, the President of SBS USA, a power of attorney, among other things, to make any and all necessary decisions as to SBS USA, including distributing its videos in the United States. Power of Attorney dated November 1, 1991. Among Sang Yul Chun's powers is the power to submit copyright applications. In turn, Sang Yul Chun entered into a contract with Ja Hak Koo, the President of Seoul Video Production, which gave Ja Hak Koo the exclusive right to copy and sell the tapes of the SBS television programs in much of the United States. This agreement also provides both that SBS USA should register the Copyrights of the programs and provide Ja Hak Koo with the copies of the registrations and that Ja Hak Koo has the power to enforce the copyrights.

Ja Hak Koo, through Seoul Video Production, entered into an exclusive distributorship agreement with Tang. Seoul Video granted Tang "the exclusive rights to reproduction of video tapes ... and sell only in the territories of Pennsylvania, Southern New Jersey ... and three Korean stores in the State of Delaware." Distributor's Agreement, Exhibit 28, Section 3 (February 24, 1992).

Each week, KBS, MBC, and SBS, through their licensees, distribute in the United States videotapes of television shows recently broadcast in Korea.

Tang alleges, and defendants conceded at the recent court hearing, that they, without authorization from plaintiff, have copied, rented or sold and continue to copy, rent or sell, videotapes of KBS, MBC and SBS television shows in the territory in which plaintiff has an exclusive right. Tang maintains that this activity infringes his exclusive rights in the copyrights of the KBS, MBC and SBS tapes.

Prior to May 1, 1992, the defendants purchased from Tang the video tapes of Korean television shows produced by KBS, MBC, and SBS.[5] Defendants thereupon rented or resold the tapes to consumers in the Korean community. At a meeting sometime in late April 1992, Tang advised defendants he was going to raise the sale price of the KBS and MBC videos. Since April 30, 1992, defendants have purchased and are purchasing KBS, MBC and SBS videos from sources outside Tang's territory. Defendants then copy, rent or sell these tapes within the Pennsylvania and South Jersey territory. Although the defendants have no dispute with respect to the sale terms of the SBS videos, Tang has

---

4. Dae Han was a plaintiff to this suit but settled with the defendants prior to the preliminary injunction hearing.

5. Prior to April 1, 1992, Tang did not sell SBS tapes to defendants Lotte Oriental, Dan Kol Oriental Market, Asian Food Market, and Treon's Cut Rate, but did sell them to the other defendants. From April 1 through 30, 1992, Tang did sell SBS tapes to Asian Food Market.

James McGirr Kelly found that the KBS and MBC Korean television shows were "validly copyrighted works." In *Dae Han Video Productions, Inc. v. Kuk Dong Oriental Food, Inc. et al.,* 19 U.S.P.Q.2d 1294 (D.Md.1990), Chief Judge Alexander Harvey in entering a permanent injunction concluded that Dae Han Video had established its ownership of valid copyrights in the MBC and KBS Korean television shows. While Tang was not a party to either of those suits, these decisions provide support to the argument that Tang received exclusive interests in valid copyrights.

refused to sell the SBS tapes to the defendants because of the dispute concerning the price of the KBS and MBC videos.

In order to prevail with a copyright infringement claim, plaintiff must establish two essential elements: (1) an exclusive ownership right in a valid, existing copyright,[6] and (2) the copying or other use of the copyrighted work by the defendant without the plaintiff's approval. *See Whelan Associates v. Jaslow Dental Laboratories*, 797 F.2d 1222, 1231–32 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987); *Major League Baseball Promotion v. Colour–Tex*, 729 F.Supp. 1035, 1039 (D.N.J.1990) (citing *Whelan* ). Here, there is no question that the defendants have in fact copied, rented or sold, without plaintiff's approval, the tapes which they have purchased from dealers other than Tang. Instead, the defendants contend Tang has no infringeable copyright interest in the Korean Television Show tapes and therefore cannot obtain relief against the defendants.

The Copyright Act, 17 U.S.C. § 501(b), provides

"[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it."

█ The owner of a copyright has exclusive rights, with limited exceptions not relevant here, to do and to authorize, among other things, the following:

(1) to reproduce the copyrighted works in copies or phonorecords; ...

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending....

17 U.S.C. § 106.

The exclusive rights found in 17 U.S.C. § 106 are separate and distinct and severable from one another; any of these rights can be transferred and owned separately. 17 U.S.C. § 201(d).[7] The grant of one does not waive any of the other exclusive rights. *Columbia Pictures Industries v. Redd Horne*, 749 F.2d 154, 158 (3d Cir.1984). The owner of a particular exclusive right is a "copyright owner" with respect to that particular right. 17 U.S.C. § 101; H.Rep. No. 94–1476, 94th Cong., 2d Sess. 123 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5739. Transfer of exclusive rights, through a license for example, by the holder of a copyright entitles the licensee, to the extent of any particular exclusive right it acquired, to all of the protections and remedies accorded to a copyright owner by the Copyright Act. 17 U.S.C. § 201(d)(2); *Wales Indus., Inc. v. Hasbro Bradley, Inc.*, 612 F.Supp. 510 (S.D.N.Y.1985). This includes the right to sue to protect its particular rights against alleged infringers. *See Hubbard Broadcasting v. Southern Satellite Systems*, 593 F.Supp. 808, 811 (D.Minn.1984), *affirmed*, 777 F.2d 393 (8th Cir.1985).

█ Holding an exclusive right, however, is not by itself sufficient to bring an action under the Copyright Act. Under 17 U.S.C. § 411(a), "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title."[8] This has been broadly construed to allow for the commencement

---

**6.** As set out in 17 U.S.C. § 101, a "copyright owner," with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right.

**7.** 17 U.S.C. § 201(d) provides: (1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.
(2) Any or the exclusive rights comprised in a copyright, including any subdivision of the rights specified by section 106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

**8.** The possession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable. 17 U.S.C. § 410(c); and *Masquerade Novelty v. Unique Industries*, 912 F.2d 663, 667 (3d Cir.1990).

of an infringement action upon the Copyright Office's receipt of the application, the required numbers of copies of the work, and the filing fee in proper form. 17 U.S.C. § 410(d)[9]; *Apple Barrel Prod., Inc. v. Beard*, 730 F.2d 384 (5th Cir.1984); *Sebastian Int'l Inc. v. Consumer Contact Ltd.*, 664 F.Supp. 909, 912 (D.N.J.1987). Thus, the registration or the application for copyright registration together with the requisite copies and payment of the filing fee is a jurisdictional prerequisite to a suit for infringement.

Tang must demonstrate that he has an ownership interest in the valid copyright and either that copyright registrations have been issued or, at least, that applications for copyright registrations on the Korean video tapes, together with the required copies and filing fees, have been submitted to the Copyright Office prior to the institution of the infringement action.

■ Where the plaintiff is not the author of the copyrighted work he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright. *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir.), *cert. denied* 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985) (cites omitted).[10] Tang contends he was granted exclusive rights under the Copyright Act to the KBS and MBC tapes and may enforce those rights by bringing an action against alleged infringers of his exclusive rights. The language in the agreement between Dae Han and Tang supports this contention. Dae Han granted Tang "exclusive rights to distribute, broadcast, copy, sell and rent" the KBS and MBC videos. The rights to reproduce and distribute a work are exclusive rights of a copyright holder under the Copyright Act. 17 U.S.C. § 106(1) and (3). Therefore, Tang does have exclusive rights which may be protected from infringement under the copyright laws. *See Hubbard Broadcasting v. Southern Satellite Systems*, 593 F.Supp. at 811.[11]

■ In addition, there was evidence that Tang had submitted applications on many of the tapes to the Copyright Office and received registrations from the Copyright Office for those tapes. Tang as the holder of exclusive rights to reproduce and distribute the videotapes is entitled to submit applications for and obtain registrations of the copyrights. 17 U.S.C. § 408(a); *Wales Indus. Inc. v. Hasbro Bradley, Inc.*, 612 F.Supp. 510, 515 (S.D.N.Y.1985).[12] This evidence supports the representations as to the validity of the copyrights.[13] In addition, there is evidence that Dae Han also submitted applications on some of the KBS and MBC tapes. Tang may bring suit based on these applications because of its exclusive interest in the tapes for which Dae Han submitted these copyright registration applications. There is no require-

9. Under 17 U.S.C. § 401(d), the "effective date of a copyright registration is the day on which an application, deposit, and fee ... have all been received in the Copyright Office." The "deposit" is the copy or copies of the work for which the registration application is submitted. 17 U.S.C. § 408(b).

10. A determination of ownership is a conclusion of law based on underlying facts. *Motta v. Samuel Weiser, Inc.*, 768 F.2d at 484.

11. Defendants do not argue as to the chain of title regarding the KBS and MBC tapes. In fact, the defendants published a "Declaration" in various Korean language newspapers in which they recognized the exclusive dealership Tang received from Dae Han, but in which they also expressed their dissatisfaction with what they characterized as an unfair market situation created by Tang in the Philadelphia area and their intention not to receive their supply of the KBS and MBC videos from Tang. Rather, their argument here is that Tang has no standing regarding these tapes because of the settlement entered between Dae Han and defendants.

12. 17 U.S.C. § 408(a) provides that "any time during the subsistence of copyright ... the owner of copyright or of any *exclusive right* in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee." (emphasis added).

13. On the applications submitted by Tang, Hyun Jun Video was identified as the copyright claimant rather than as someone who acquired an exclusive right through a license. If Tang erred in identifying itself as copyright claimant on the application rather than Dae Han, it is a technical misdescription rather than a jurisdictional error. *Wales Indus. Inc. v. Hasbro Bradley, Inc.*, 612 F.Supp. 510, 515 (S.D.N.Y.1985).

**504**

ment under the statute that the only person who may bring an action is the person who applies for the copyright registration. The law merely provides that there must be registration of the copyright claim, pursuant to the Copyright Act, before an action may be instituted. 17 U.S.C. § 411(a). Thus, this court holds that Tang has established his ownership interest in a valid copyright and has standing to bring the action for copyright infringement for KBS and MBC videos, both those for which Tang's counsel submitted applications and received copyright registrations, and those which are evidenced by the applications submitted by Dae Han.

Defendants argue that the settlement between the defendants and plaintiff Dae Han before the preliminary injunction hearing closes off any recourse that Tang may have against the defendants. This settlement does not change the agreement Tang has with Dae Han, and thus Tang still may enforce his exclusive rights. Tang's right to enforce the exclusive sublicense is based on the United States copyright law and is not prohibited under the agreement with Dae Han.

Tang must also establish an interest in a valid copyright as to the SBS tapes in order to maintain his claims based on infringement of the copyrights in those tapes. The documents and testimony relating to the agreements between the Presidents of SBS and of SBS USA, between Sang Yul Chun and Seoul Video Production, and between Seoul Video and Tang establish a proprietary right through a chain of title. Defendants contest the nature and extent of the agreement that existed between SBS and SBS USA, but according to the testimony

SBS USA President Sang Yul Chun, SBS granted Sang Yul Chun the power, among other things, to secure copyrights on the SBS video productions from Korea. This power, according to Chun, is derived from the contract between SBS and SBS USA, written only in Korean, and the Power of Attorney granted to Sang Yul Chun by SBS.

Seoul Video granted Tang "the exclusive rights" to reproduce and distribute, and this Court finds that these rights are enforceable under the Copyright Act against alleged infringers.

Tang has also met the registration requirement. There is evidence of applications made by both SBS USA and Tang for registrations.[14] In addition, Tang received, and provided to the court, the copyright registrations for the applications it submitted.

Defendants argue that Tang acted outside of his authority under his agreement with Seoul Video by filing copyright applications for the SBS tapes.[15] However, Tang's agreement did give him exclusive rights to reproduce and distribute the tapes. As "owner" of these exclusive rights, Tang is permitted under the Copyright Act to submit applications. 37 C.F.R. § 202.3(c)(1).[16] Thus, Tang may bring a copyright infringement action on those SBS tapes for which Tang submitted applications and received copyright registrations as well as those for which SBS USA submitted applications.

Defendants contend that Tang is barred from claiming infringement as to the SBS copyrights under the equitable

---

**14.** While under its agreement with Ja Hak Koo, SBS USA usually filed the copyright application, Sang Y. Chun, President of SBS USA, was aware of others doing so and permitted others to do so, including Tang. Chun Deposition 6/15/92.

**15.** Defendant contends that the limitation in Section 6 of the Distributor's Agreement between Tang and Seoul Video, which provides that Tang

"will ... reproduce the products and sell under the SBS brand name for its own account and will act as an independent contractor with respect to [Seoul Video]. In no event

shall [Tang] represent itself as an agent or legal representative of [Seoul Video],"

limits Tang's ability to make copyright applications or enforce the copyright. However, this provision merely provides a restriction on Tang's ability to make contracts with and representations to third parties. *See Major League Baseball Promotion Corp. v. Colour—Tex, Inc.,* 729 F.Supp. 1035 (D.N.J.1990).

**16.** "An application for copyright registration may be submitted by any author or other copyright claimant of a work, or the owner of any exclusive right in a work...."

doctrine of "unclean hands" because of Tang's refusal to sell SBS tapes to the defendants. The doctrine of unclean hands applies to bar a claim only if "(1) a party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to the matter in issue (4) that injures the other party and (5) affects the balance of equities between the litigants." *Castle v. Cohen,* 676 F.Supp. 620, 627 (E.D.Pa.1987), *aff'd in part and remanded in part on other grounds,* 840 F.2d 173 (3d Cir.1988). The "unclean hands" doctrine has been recognized in this circuit as applicable to copyright infringement actions. *Testa v. Janssen,* 492 F.Supp. 198, 201 (W.D.Pa.1980). In *Testa,* Judge Ziegler found that the plaintiff's misrepresentation on a copyright application as to authorship of a song was not a bar to the infringement action. No prejudice had accrued to the defendants and the transgression in no way affected the validity of the plaintiff's copyright. *Id.; and see Williams v. Arndt,* 626 F.Supp. 571, 578 (D.Mass.1985).

■ Here, Tang's refusal to sell the SBS tapes was a response to defendants' copy, rental and sale of tapes acquired from the Maryland dealer. Defendants contend that Tang's action harmed them in that they had to obtain SBS tapes from elsewhere and were thus forced into violating Tang's exclusive distributorship in the SBS tapes. There is, however, no statutory requirement that Tang, as the holder of an exclusive ownership interest in a copyright, has to rent, sell or distribute the works in which he has an interest. While defendants may have been harmed by the inability to purchase the SBS tapes from Tang, they should not now blame Tang for their subsequent decision to infringe on his exclusive rights in those tapes.

Tang seeks preliminary injunctive relief and impounding pursuant to 17 U.S.C. §§ 502(a) and 503(a). When ruling on a motion for preliminary injunctive relief, the district court must consider four factors: (1) the likelihood that the applicant will prevail on the merits at the final hearing; (2) the extent to which the plaintiffs are being irreparably harmed by the conduct complained of; (3) the extent to which the defendants will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. *S & R Corporation v. Jiffy Lube International, Inc.,* 968 F.2d 371 at 374 (3d Cir.1992) (citing *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 197–83 (3d Cir.1990)). All four factors should favor preliminary relief before the injunction will issue. *Id.* The same "likelihood of success" standard adopted in preliminary injunction cases is applicable to requests for impounding. *WPOW, Inc. v. MRLJ Enterprises,* 584 F.Supp. 132 (D.D.C.1984).

■ As to the likelihood of success on the merits with regards to the KBS and MBC tapes, the videotapes obtained from the defendants as well as the stipulation of counsel at hearing establish that the defendants did copy the videotapes. Along with establishing that defendants have copied the copyrighted works without Tang's permission, Tang has also established his exclusive interests in the valid copyrights on the SBS, KBS and MBC video tapes. A *prima facie* case of copyright infringement is demonstrated where the plaintiff has shown (1) an exclusive ownership right in a valid, existing copyright and (2) copying or other use of the copyrighted material by the defendant without the plaintiff's approval. *See, e.g., Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240 (3d Cir.1983), *cert. dismissed,* 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984); *Georgia Television v. TV News Clips of Atlanta,* 718 F.Supp. 939, 946 (N.D.Ga. 1989). By establishing the elements of a *prima facie* case, Tang has demonstrated a likelihood of success on the merits.

■ Once the copyright holder has made out a *prima facie* case of infringement, irreparable injury is presumed. *Apple Computer, Inc.,* 714 F.2d at 1254.

The balance of hardships factor also weighs in favor of the issuance of a preliminary injunction as to the KBS, MBC and SBS tapes. The testimony evidences that Tang is losing a large portion of its business. In addition, Tang also bears the ex-

pense of royalty payments made to Dae Han. Should there be some harm to the Defendants' business resulting from an injunction, it is insufficient to require a denial of the preliminary injunction. In a proceeding on a motion for preliminary injunction where the plaintiff has made a *prima facie* showing of copyright infringement, a preliminary injunction should not be denied merely because of the potential destruction of defendants' businesses. *Georgia Television*, 718 F.Supp. at 949 (cites omitted). If that were the correct standard, then a knowing infringer would be permitted to construct its business around its infringement, a result the Courts cannot condone. *Apple Computer, Inc.*, 714 F.2d at 1255. Any harm to defendants is far outweighed by the damage done to Tang by the infringement of its exclusive rights in the copyrighted videos. *See S & R Corporation v. Jiffy Lube International, Inc.*, No. 89–4564, 968 F.2d at 379.

With regards to the public interest in the preliminary injunction, "it is virtually axiomatic that the public interest can only be served by upholding copyright protection and, correspondingly, preventing misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc.*, 714 F.2d at 1255 (citing *Klitzmer Industries, Inc. v. H.K. James & Co.*, 535 F.Supp. 1249, 1259–60 (E.D.Pa.1982)).

Tang, as the moving party for the preliminary injunction, has met its burden of showing (1) its reasonable probability of eventual success on the merits; (2) that irreparable injury will occur if injunctive relief is not granted; and (3) the harm to the moving party outweighs the potential harm to the nonmoving party and the general public.

The Court will grant Tang's motion for a preliminary injunction and for impoundment.

### PRELIMINARY INJUNCTION AND ORDER

AND NOW, this 13th day of July, 1992, for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. The Motion of Plaintiff Hung Tang, d/b/a Hyun Jin's Video (hereinafter Hung Tang) for a Preliminary Injunction is GRANTED.

(a) Defendants, Ho Yong Hwang d/b/a Ko Ba Woo Video; Jung Hun Nam d/b/a Han A Rum Video; Jang Hee Lee d/b/a Korean Video Rental; Kyung Park d/b/a Ga Go Pa Food Market; Myong Ja Kim d/b/a Dan Kol Oriental Market; Jung Hi Lee d/b/a Lotte Oriental; Man Su Ha d/b/a Treon's Cut Rate; Won Chang Choi d/b/a Asian Food Market; and Soon Hwa Kang d/b/a Koa Video; and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them are hereby preliminarily enjoined, until a final hearing, from infringing the copyrights of Korean Broadcasting System ("KBS"), Munwha Broadcasting Company ("MBC"), and Seoul Broadcasting System ("SBS") for which plaintiff Hung Tang has exclusive distribution rights in Pennsylvania, South Jersey, and Delaware.

2. Plaintiff Hung Tang is entitled to an impoundment, pursuant to 17 U.S.C. § 503(a), and the motion for impoundment will be granted upon the submission by plaintiff Hung Tang to the Court of a proper Form of Order and Writ of Seizure providing with specificity as to each defendant what videocassettes and other articles are to be seized and impounded, and the date and time such seizure is to take place, after consultation with the United States Marshall.

3. The Motion of Plaintiff Hung Tang for attorney fees and costs incurred in connection with the Motion for Preliminary Injunction is DENIED.